## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| WILDWOOD CONSULTING, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ROGERS FINISHING, LLC d/b/a )<br>ADD BAC, ADD BAC, INC., )<br>WARREN EDWARD STATEN, and )<br>JUDY STATEN, )<br>)<br>Defendants. )<br>_____ ) | CIVIL ACTION FILE NO.<br><br><br><br><br>COMPLAINT<br>**JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT

Plaintiff WILDWOOD CONSULTING, LLC (hereinafter referred to as "Plaintiff" or "Wildwood"), by and through its undersigned counsel, hereby sets forth this *Verified Complaint* (hereinafter "Complaint") for relief against Defendants Rogers Finishing, LLC d/b/a Add Bac, Add Bac, Inc., Warren Edward Staten, and Judy Staten (hereinafter collectively referred to as "Defendants").

## PARTIES, JURISDICTION, AND VENUE

1.      Wildwood Consulting, LLC ("Wildwood") is a Texas limited liability company with a principal office located at 1006 Wildwood Crossing, Georgetown, Texas 78633.

1

2.  Timothy Croley ("Mr. Croley") is an individual residing at 432 Deer Ridge Trail NE, Charleston, Tennessee 37310. Croley is the President of Wildwood and the creator of the CT formula (as more fully defined below).

3.  Rogers Finishing, LLC d/b/a Add Bac ("Add Bac" or "Defendant Add Bac") is a Georgia limited liability company. Its principal place of business is located in Whitfield County, Georgia at 1001 Riverbend Road, Dalton, Georgia 30721. Defendant Add Bac may be served with process by delivering a copy of the Summons and Complaint to its Registered Agent, Warren Edward "Ed" Staten, at 1470 Dawnville Road, Dalton, Whitfield County, Georgia 30721.

4.  Add Bac, Inc. ("ABI" or "Defendant ABI") is a Georgia corporation. Its principal place of business is located in Whitfield County, Georgia at P.O. Box 4117, Dalton, Georgia 30719. Defendant ABI may be served with process by delivering a copy of the Summons and Complaint to its Registered Agent, Warren Edward "Ed" Staten, at 1001 Riverbend Road, Dalton, Whitfield County, Georgia 30720.

5.  Warren Edward "Ed" Staten ("Mr. Staten" or "Defendant Warren Edward Staten") is an individual resident of Whitfield County, Georgia. Mr. Staten resides within the jurisdictional territory of this Court. Mr. Staten may be

served with process by delivering a copy of the Summons and Complaint to his residence located at 1470 Dawnville Road, Dalton, Georgia 30721.

6.    Judy Staten ("Ms. Staten" or "Defendant Judy Staten") is an individual resident of Whitfield County, Georgia. Ms. Staten resides within the jurisdictional territory of this Court. Ms. Staten may be served with process by delivering a copy of the Summons and Complaint to her residence located at 1470 Dawnville Road, Dalton, Georgia 30721.

7.    The Defendants are subject to personal jurisdiction in this Court.

8.    This matter involves the misuse, disclosure, and theft of trade secrets, as defined in the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*, in addition to state statutory and common law claims.

9.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between a citizen of the State of Texas and citizens of the State of Georgia and the amount in controversy exceeds Seventy-Five Thousand and NO/100 Dollars ($75,000.00), exclusive of interest and costs.

10.   This Court has original jurisdiction over this action pursuant to 28 U.S.C.§ 1331, in that this is a civil action arising under the laws of the United States, more specifically the Defend Trade Secrets Act,

18 U.S.C. § 1831 et seq., and pendent jurisdiction over state and common law claims.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), in that the Defendants reside in the district, 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district, and 28 U.S.C. § 1391(b)(3), in that the Defendants are subject to personal jurisdiction in this district with respect to this action, and there is no other district in which the action may otherwise be brought.

## FACTUAL ALLEGATIONS

12. Plaintiff developed unique polyurethane coating technology and formulas known to the parties as "WC-001A." Plaintiff is the sole owner of said technology and formulas, including all patents and patent applications existing or pending that relate to same (hereinafter referred to as the "CT" or the "Trade Secret").

13. The CT is a unique polyurethane coating used for synthetic turf backing and adhesion. The CT formula contains a precise measurement of ingredients specially developed for the CT.

14. Plaintiff has invested significant time, financial resources, effort, and materials to develop the trade secrets, confidential information, marketing strategies, and value associated with the CT and its use.

15. Defendants would not have any significant knowledge about how to manufacture and use the CT without the Trade Secrets, other documentation, or training provided by Plaintiff pursuant to the contractual agreements between the parties.

16. The Trade Secrets were licensed by Plaintiff to Defendants for express limited purposes pursuant to that certain Manufacturing License Agreement between Plaintiff and Add Bac dated April 25, 2014 (the "MLA"). A true and correct copy of the MLA has been attached hereto as **Exhibit "A"** and incorporated herein by reference.

17. The Trade Secrets and other components of the CT are protected from unauthorized use or disclosure pursuant to the terms of the MLA and a collateral Confidentiality/Nondisclosure Agreement (the "NDA") between ABI and Add Bac (collectively as party in the first part) and Plaintiff (as party in the second part) entered into on or about March 26, 2014. A true and correct copy of the NDA has been attached hereto as **Exhibit "B"** and incorporated herein by reference.

18.   Section II of the MLA granted Add Bac the exclusive right and license to "utilize the CT solely in connection with the Manufacturing Processes."

19.   Section I of the MLA defines "Manufacturing Process" to mean "the manufacture by Add Bac of any product for any purpose whatsoever, whether for sale, lease, marketing, promotion, or any other purpose."

20.   Section VI of the MLA granted Add Bac the license to use CT as defined above for a term of five (5) years.

21.   Section II of the MLA further provides that upon termination or expiration of the MLA, Add Bac's license would terminate, and its rights to the CT would consequently cease such that Add Bac would have no right to utilize the CT thereafter for any reason.

22.   Section III of the MLA provides that Add Bac will pay Wildwood a royalty for the use of the CT (the "Royalties" or "Royalty"). Specifically, Add Bac was required to pay Wildwood Royalties equal to fifty percent (50%) of the profit (the "Profit"). Section III of the MLA defines the "Profit" to mean the difference between (1) the fixed estimated cost of Add Bac's previous polyurethane backing material used at the time the parties entered into the MLA and (2) the actual cost of the polyurethane backing material supplied by Wildwood utilizing the CT, then reducing the difference by any "Damages."

23. Section III of the MLA states that the fixed estimated cost of Add Bac's current polyurethane backing material was $0.77554 per pound.

24. Section III of the MLA states that the "actual cost per pound" of polyurethane backing is calculated by dividing "Actual cost" by "total pounds of polyurethane backing material supplied." "Actual cost" is determined by using actual invoices for raw materials comprising the polyurethane backing material supplied by Wildwood utilizing the CT. "Total pounds of polyurethane backing material supplied" is to be calculated by dividing the pounds of isocyanate utilized in the polyurethane backing material supplied by Wildwood utilizing the CT by 0.1385.

25. Section III of the MLA defines "Damages" to mean the total amount of any damages or chargebacks claimed by, and actually paid to, any Add Bac customer or third party as a result of a claim of (a) defective polyurethane backing utilizing the CT, and/or (b) defective product, when the claimed defect is reasonably attributable to defective polyurethane backing utilizing the CT.

26. Pursuant to Section IV of the MLA, Add Bac agreed to certain restrictions governing the modification or improvement of the CT. First, any modification or improvement of the CT developed solely by Wildwood, without the input

7

of Add Bac, shall be the sole property of Wildwood. Second, any modification or improvement to the CT developed solely by Wildwood shall only be utilized in manufacturing processes upon the express consent of Add Bac. Third, if and only if the parties entered into a written joint agreement for ownership of a modified form of the CT, any modification or improvement of the CT developed with contribution or support by Add Bac could be joint property of Wildwood and Add Bac, with each party owning an undivided fifty percent (50%) interest in the property. Finally, "[u]nless the prior written approval of Wildwood is obtained, Add Bac may not modify or alter the CT in any manner during the five (5) year term of the MLA.

27.    Pursuant to Section X of the MLA, Add Bac and Wildwood entered into a confidentiality agreement which provided that neither party would disclose information confidential in nature to any third party without the prior written consent of the non-disclosing party.

28.    The NDA prohibits Add Bac and ABI from disclosing any confidential information, including, but not limited to, the CT, trade secrets, present or future products, technology, or formulas, to any competitor or for purposes to undermine the ownership rights of Wildwood.

29. Under the NDA, all information provided by Wildwood to Add Bac, including but not limited to the CT formula, is deemed confidential and proprietary in nature.

30. Pursuant to the NDA, Add Bac and ABI are obligated to hold all confidential information in confidence and are expressly prohibited from disclosing any confidential information to any person or entity, absent prior written consent from Wildwood.

31. Add Bac and ABI were further contractually obligated to take all steps necessary to ensure the terms and conditions of the NDA were adhered to by their officers, employees, or agents.

32. Moreover, Add Bac is only permitted to provide access to confidential information, including, without limitation, the CT formula, to authorized officers and employees on, and only on, a need to know basis which is directly and solely for the authorized purposes under the NDA.

33. Prior to obtaining access to any such confidential and/or proprietary information, Add Bac and ABI must disclose to Wildwood the identity of any such receiving officer or employee, and such receiving officer or employee must have executed a confidentiality and nondisclosure agreement with Wildwood.

34.  In correspondence dated May 14, 2019, counsel for Defendant Warren Edward Staten acknowledged that Mr. Staten's signature on the NDA is effective to show his agreement to be bound by the terms of the NDA in his individual capacity in addition to in his official capacity for Add Bac/ABI. A true and accurate copy of counsels' email exchanged is attached hereto as **Exhibit "C"** and incorporated herein by reference.

35.  Prior to the expiration of the MLA, Mr. Croley visited the Add Bac/ABI facilities and determined that certain individuals who were not the authorized officers and employees of Add Bac/ABI that Wildwood previously approved according to the NDA were present while the CT was being produced. Mr. Croley recognized one of the individuals present as a fellow industry professional named Tim Brown ("Mr. Brown"), who is a person skilled in the art of chemical compounds. Mr. Brown was not an authorized user of the CT pursuant to the NDA.

36.  During his visit, Mr. Croley also discovered that Add Bac/ABI had disclosed confidential and proprietary information related to the CT to unauthorized individuals in violation of the NDA.

37. During Mr. Croley's visit, Add Bac's plant manager admitted that Add Bac and/or ABI altered Wildwood's proprietary CT formula by mixing the approved polyol with a non-approved polyol.

38. Add Bac and ABI were fully aware that the aforementioned alteration to the CT was prohibited without prior written approval of Wildwood pursuant to Section IV of the MLA.

39. Instead of notifying Wildwood of the alteration, Add Bac continued production with the polyol blend despite the adverse effects on the quality of the CT.

40. Add Bac/ABI's actions constituted a breach of Section IV of the MLA as well as the Quality Control and Approval provisions of Section V of the MLA.

41. Additionally, pursuant to the MLA, Wildwood is entitled to payment of Royalties for each piece of finished product utilizing the CT within thirty-one (31) days after the first day of the first month following the shipment from Add Bac of such product.

42. Add Bac and the other Defendants continue to use and benefit from the CT formula and altered variations of the CT formula; however, Defendants have failed to pay Royalties when due and currently owe Wildwood in excess of

Four Hundred Thousand Dollars and 00/100 ($400,000.00) in unpaid Royalties.

43. Add Bac is in breach of the MLA for failure to pay Plaintiff Royalties when due.

44. According to the MLA, Add Bac was required to provide Wildwood a "written report that sets forth, in detail, the calculation of the Royalty payment, along with proof of purchase of isocyanate utilized in the polyurethane backing material supplied by Wildwood utilizing the CT" with each and every Royalty payment.

45. Add Bac is in breach of the MLA for failing to provide the required reports to Wildwood and failing to pay Royalty payments due and owing to Wildwood.

46. Although not required by the terms of the MLA or NDA (hereinafter collectively referred to as the "Agreements"), upon discovering that Defendants had improperly used and misappropriated the CT, on or about April 24, 2019, counsel for Plaintiff delivered a Demand to Cease and Desist to Defendants (the "Demand Letter"). A true and accurate copy of the Demand Letter is attached hereto as **Exhibit "D"** and incorporated herein by reference.

47. Plaintiff's Demand Letter notified Defendants of their material breaches of the Agreements and reiterated Defendants of their post-termination

contractual obligations. The Demand Letter also requested that Defendants cease use of the CT or any derivations therefrom and demanded compliance with the Agreements by submitting payment of all unpaid Royalties to Plaintiff.

48.  In blatant defiance of the Demand Letter and the Agreements, Defendants continue to utilize the CT and altered variations of the CT formula without the permission of Plaintiff.

49.  On information and belief, both Add Bac and ABI are operated as alter egos of each other, and both are operated as alter egos of Defendant Warren Edward Staten and Defendant Judy Staten.

50.  On information and belief, the Defendants comingle funds amongst each other without attention paid to separate property rights or observance of corporate formalities.

51.  On information and belief, the Defendants share contract rights with each other, including, but not limited to, misappropriating the license and other rights associated with the CT pursuant to the MLA.

52.  On information and belief, employees of both Add Bac and ABI were paid payroll from personal account(s) owned by Defendant Warren Edward Staten and Defendant Judy Staten.

53. On information and belief, Wildwood was paid certain Royalties using funds from personal account(s) owned by Defendant Warren Edward Staten and Defendant Judy Staten.

54. On information and belief, funds have been comingled between the personal account(s) of Defendant Warren Edward Staten and Defendant Judy Staten and the business account(s) of Add Bac.

55. On information and belief, funds have been comingled between the personal account(s) of Defendant Warren Edward Staten and Defendant Judy Staten and the business account(s) of ABI.

56. On information and belief, funds have been comingled between the business account(s) of ABI and the business account(s) of Add Bac.

57. On information and belief, Defendant Warren Edward Staten and Defendant Judy Staten have made and continue to make personal payments to themselves out of funds procured from the use and misappropriation of the CT formula.

58. On information and belief, each of Add Bac and ABI served as a mere alter ego or business conduit of the other.

59. On information and belief, Defendant Warren Edward Staten has abused and/or disregarded the corporate forms and separateness of Add Bac and ABI

to evade responsibility and/or hinder, delay, or defraud creditors, including, but not limited to, Plaintiff.

60.    For the foregoing reasons, Add Bac can be held jointly and severally liable for the liabilities, obligations, and misconduct of ABI.

61.    For the foregoing reasons, ABI can be held jointly and severally liable for the liabilities, obligations, and misconduct of Add Bac.

62.    For the foregoing reasons, Defendant Warren Edward Staten can be held jointly and severally liable for the liabilities, obligations, and misconduct of both Add Bac and ABI.

63.    For the foregoing reasons, Defendant Judy Staten can be held jointly and severally liable for the liabilities, obligations, and misconduct of both Add Bac and ABI.

## COUNT I
### Breach of Contract
### (Against Defendant Add Bac and Defendant ABI)

64.    Plaintiff hereby incorporates and restates all allegations set out above as though set forth in full herein.

65.    The duties and obligations set forth in the Agreements are binding upon Add Bac and ABI.

66. Defendant Add Bac and Defendant ABI breached the respective Agreements by committing, without limitation, the following acts:

   a)   Defendant Add Bac and Defendant ABI improperly used, duplicated, and disclosed Wildwood's trade secrets, confidential information, and proprietary information in breach of Sections II through X of the MLA and NDA;

   b)   Defendant improperly used, disclosed, and duplicated the CT formula in an unauthorized manner in breach of Sections II through X of the MLA and the NDA;

   c)   Defendant improperly used and altered the CT in a manner not permitted in the Agreements and not approved by Wildwood, a breach of Sections II through X of the MLA and NDA;

   d)   Defendant continues to use the CT formula and altered versions of the CT formula for its financial benefit and to the exclusion of Plaintiff;

   e)   Defendant has failed to submit accurate sales reports for the use of the CT in accordance with the MLA; and

   f)   Defendant has failed to pay Plaintiff Royalties owed under the MLA.

67. Pursuant to the Agreements, Add Bac's license to use the CT in any form terminated in April 2019.

68.   Subsequently, Defendant Add Bac and Defendant ABI breached the MLA, as follows:

g)    Defendant Add Bac and Defendant ABI did not cease using the CT formula in breach of Section II of the MLA;

h)    Defendant Add Bac and Defendant ABI did not cease using Wildwood's trade secrets or confidential information, but continued to use the same in their business in breach of Section II of the MLA;

i)    Defendant Add Bac and Defendant ABI did not pay all sums due and owing to Wildwood in breach of Section II of the MLA;

j)    Defendant Add Bac and Defendant ABI did not return the CT formula and all trade secret or confidential information to Plaintiff and, on information and belief, continue to utilize the CT for their own benefit and use, in breach of Sections II through X of the MLA; and

k)    Defendant Add Bac and Defendant ABI have continued to operate Add Bac using the CT formula for their benefit and financial gain without the express consent of Plaintiff.

69.   Defendant Add Bac's and Defendant ABI's breaches of the Agreements have caused and continue to cause injury and damage to Plaintiff. These injuries include loss of income from Royalty payments for the use of the CT, loss of

business opportunities, adverse effects on the integrity and quality of the CT formula, and compromise or loss of Plaintiff's trade secrets and confidential information.

70. Defendant Add Bac's and Defendant ABI's breaches of the Agreements are material, ongoing, and serious. Accordingly, such breaches have caused immediate and irreparable damage to Plaintiff. These immediate and irreparable injuries are continuing and will continue so long as Defendant Add Bac's and Defendant ABI's conduct persists.

71. Plaintiff is entitled to recover damages from Defendant Add Bac and Defendant ABI, in amounts to be determined at trial. In addition, many of the injuries identified above are difficult or impossible to quantify and will continue unless and until Defendant Add Bac's and Defendant ABI's conduct ceases.

72. Therefore, Plaintiff seeks temporary, preliminary, and permanent injunctive relief, as set forth more completely below, in addition to monetary damages.

## COUNT II
### Breach of Contract
**(Against Defendant Warren Edward Staten and Defendant Judy Staten)**

73. Plaintiff hereby incorporates and restates all allegations set out above as though set forth in full herein.

74. The duties and obligations set forth in the Agreements are binding obligations of the Statens because the Statens used Add Bac and ABI as mere alter egos and business conduits for their personal actions.

75. By their contractual terms, the obligations of the Agreements survive termination of the license relationship between Wildwood and the Statens.

76. The Statens misappropriated Royalty payments to which Plaintiff was entitled by comingling said payments with the funds held in personal banking accounts of the Statens.

77. The Statens breached the Agreements because each used Plaintiff's trade secrets for their own personal benefit and collected funds to which Plaintiff was entitled.

78. The Statens have continued to use Plaintiff's trade secrets for their own personal benefit.

79. The Statens' breaches of the Agreements have caused and continue to cause injury and damage to Wildwood. These injuries include loss of income from Royalty payments for use of the CT, loss of business opportunities, adverse effects on the integrity of the CT formula, and compromise or loss of Plaintiff's trade secrets and confidential information.

80. The Statens' breaches of the Agreements are material, ongoing, and serious. Accordingly, such breaches have caused immediate and irreparable damage to Plaintiff. These immediate and irreparable injuries are continuing and will continue so long as the Statens' conduct persists.

81. Plaintiff is entitled to recover damages from the Statens, in amounts to be determined at trial. In addition, many of the injuries identified above are difficult or impossible to quantify and will continue unless and until the Statens' conduct ceases.

82. Therefore, Plaintiff seeks temporary, preliminary, and permanent injunctive relief, as set forth more completely below, in addition to monetary damages.

### COUNT III
### Defend Trade Secrets Act, 18 U.S.C. § 1832 *et seq.*
### (Against All Defendants)

83. Plaintiff hereby incorporates and restates all allegations set out above as though set forth in full herein.

84. Plaintiff imparted trade secrets in the form of the CT formula to Add Bac and ABI pursuant to the Agreements.

85. Plaintiff owns the trade secrets and other intellectual property.

86. Plaintiff's trade secrets (the "Trade Secrets") constitute trade secrets within the meaning of the Defend Trade Secrets Act (hereinafter the "DTSA"), 18

U.S.C. §§ 1839(3). The Trade Secrets are a valuable possession of Plaintiff and the information is not generally known or readily ascertainable by proper means by third parties.

87.   Plaintiff employs reasonable means under the circumstances to protect its Trade Secrets from misappropriation or disclosure to persons or entities not authorized to receive them. These safeguards ensure that unauthorized persons cannot access the CT Trade Secrets.

88.   Plaintiff's Trade Secrets were imparted to Add Bac and ABI only under the protection of the Agreements, which obligates each licensee and those employees with pre-approved access by Plaintiff to: maintain absolute confidentiality of the Trade Secrets during and following the term of the Agreements; not duplicate or make unauthorized alterations of the Trade Secrets; and adopt all reasonable measures to protect the Trade Secrets. In addition, the CT formula was licensed to Add Bac and ABI for the term of the Agreements. Therefore, the Add Bac's and ABI's use of the CT was limited to the five (5) year term of the MLA. Add Bac and ABI were obligated to only use the CT as described in the Agreements, and Plaintiff is entitled to payments for Defendants' use of the CT.

89.  Plaintiff's Trade Secrets were divulged to Add Bac and ABI under license, namely the MLA, which strictly limited their use and prohibited unauthorized use, transfer, or disclosure, as described above.

90.  Defendants' misappropriation, disclosure, and unauthorized use of Plaintiff's Trade Secrets breached Add Bac's and ABI's duty to maintain secrecy and constitutes improper means within the meaning of the DTSA, 18 U.S.C. § 1839(6).

91.  With intent to misappropriate and use Plaintiff's Trade Secrets for their personal benefit, in violation of their contractual duty to maintain secrecy of the Trade Secrets, and intending or knowing that the wrongful conduct would injure Plaintiff, Defendants:

l)  Misappropriated Plaintiff's Trade Secrets for use in the Defendants' business venture without authorization;

m)  Altered Plaintiff's Trade Secrets formula for use in the Defendants' business venture without authorization;

n)  Communicated and/or conveyed Trade Secrets to third-parties without authorization; and

o)  Possessed Plaintiff's Trade Secrets, knowing same to have been appropriated to Defendants' business venture without authorization.

92.   The Defendants' wrongful actions constitute the theft of Trade Secrets, a violation of the DTSA, 18 U.S.C. § 1832.

93.   The Defendants' violations of the DTSA have caused and continue to cause injury and damage to Plaintiff. These damages include loss of income, loss of business opportunities, adverse effects on the integrity of the CT formula, loss of client relationships, and compromise or loss of Plaintiff's valuable Trade Secrets and confidential information.

94.   In addition to these actual losses, the Defendants' misappropriation, theft, and wrongful use of Plaintiff's Trade Secrets have resulted in unjust enrichment to the Defendants, in amounts to be determined at trial.

95.   The Defendants' DTSA violations are material, ongoing, and serious. They threaten the continued viability and value of Plaintiff's Trade Secrets and have caused immediate and irreparable damage to Plaintiff. These immediate and irreparable injuries are continuing and will continue so long as the Defendants' conduct persists.

96.   The Defendants' conduct was undertaken in bad faith.

97.   Plaintiff is entitled to recover actual damages from the Defendants, in amounts to be determined at trial, and to recover the unjust enrichment realized by the Defendants from the theft, misappropriation, use, and disclosure of Plaintiff's

Trade Secrets pursuant to 18 U.S.C. § 1836(b)(3)(A), together with its attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

98.   The threat to Plaintiff's Trade Secrets and damage to Plaintiff will continue so long as the Defendants persist in their wrongdoing.

99.   Therefore, Plaintiff seeks preliminary and permanent injunctive relief, pursuant to 18 U.S.C. § 1836(b)(3)(A), requiring the Defendants, and all persons, entities and others claiming rights through any Defendant to:

p)   Immediately cease using all CT Trade Secrets, including formula specifications, operational and production techniques and methods, research and development, pricing and cost information, technical or non-technical data, patterns, compilations, programs, devices, methods, drawings, processes, financial data, financial plans, and production plans;

q)   Return to Plaintiff all originals and copies of materials, media (including, but not limited to electronic and archive storage media) and documents that contain, summarize, or reflect Plaintiff's Trade Secrets, including those listed above; and provide the Court with the original unaltered electronic media on which any such Trade Secret materials are stored; and

r)     Refrain from accessing any Plaintiff Trade Secrets that may be stored in third party servers until further order of this Court.

**COUNT IV**
**Georgia Trade Secrets Act, O.G.C.A. § 10-1-760 *et seq.***
**(Against All Defendants)**

100.  Plaintiff hereby incorporates and restates all allegations set out above as though set forth in full herein.

101.  Plaintiff's Trade Secrets constitute trade secrets within the meaning of the Georgia Secrets Act ("GTSA"), O.C.G.A. § 10-1-760. The CT Trade Secrets are valuable to Plaintiff, the possession by Defendants affords Defendants an advantage over competition, and the information is not generally known or readily ascertainable by proper means.

102.  Plaintiff employs means reasonable under the circumstances to protect its Trade Secrets from misappropriation or disclosure to persons or entities not authorized to receive them. These safeguards ensure that unauthorized persons cannot access the CT Trade Secrets.

103.  Plaintiff's Trade Secrets were imparted to Add Bac and ABI only under the protection of the Agreements, which obligates each licensee and those employees approved by Plaintiff to maintain absolute confidentiality of the Trade Secrets during and following the term of the Agreements; not duplicate

or make unauthorized alterations of the Trade Secrets; and adopt all reasonable measures to protect the Trade Secrets. In addition, the CT formula was licensed to Add Bac and ABI for the five (5) year term of the MLA. During the term of the license, Add Bac and ABI were obligated to only use the CT as described in the Agreements.

104. Plaintiff's Trade Secrets were divulged to Add Bac and ABI pursuant to a license under the MLA, which strictly limited their use and prohibited unauthorized use, transfer or disclosure, as described above. Add Bac's and ABI's misappropriation, disclosure, and unauthorized use of Plaintiff's Trade Secrets breached Add Bac's and ABI's duty to maintain secrecy.

105. With intent to misappropriate and use Plaintiff's Trade Secrets for their personal benefit, in violation of their contractual duty to maintain secrecy of the Trade Secrets, and intending or knowing that the wrongful conduct will injure Plaintiff, the Defendants:

    s)    Misappropriated Plaintiff's Trade Secrets for use in Defendants' business ventures without authorization;

    t)    Altered Plaintiff's Trade Secrets formula for use in the Defendants' business venture without authorization; and

u)   Possess Plaintiff's Trade Secrets, knowing same to have been appropriated to Defendants' business venture without authorization.

106. The Defendants' wrongful actions constitute the misappropriation of Plaintiff's Trade Secrets, as defined by GTSA, O.C.G.A. § 10-1-761.

107. The Defendants' violations of GTSA have caused and continue to cause injury and damage to Plaintiff. These damages include loss of income, loss of business opportunities, adverse effects on the integrity of the CT formula, loss of client relationships, and compromise or loss of Plaintiff's valuable Trade Secrets and confidential information.

108. In addition to these actual losses, the Defendants' misappropriation, theft, and wrongful use of Plaintiff's Trade Secrets have resulted in unjust enrichment to the Defendants, in amounts to be determined at trial.

109. The Defendants' GTSA violations are material, ongoing, and serious.

110. They threaten the continued viability of the CT Trade Secrets and have caused immediate and irreparable damage to Plaintiff.

111. These immediate and irreparable injuries are continuing and will continue so long as the Defendants' conduct persists.

112. The Defendants' conduct was undertaken in bad faith.

113. Plaintiff is entitled to recover its actual damages from the Defendants, in amounts to be determined at trial, and recover the unjust enrichment realized by the Defendants from the theft, misappropriation, use and disclosure of Plaintiff's Trade Secrets pursuant to O.C.G.A. § 10-1-763, together with its attorneys' fees pursuant to O.C.G.A. § 10-1-764.

114. The threat to Plaintiff's Trade Secrets will continue so long as the Defendants persist in their wrongdoing.

115. Therefore, Plaintiff seeks preliminary and permanent injunctive relief, pursuant to O.C.G.A. § 10-1-762, requiring the Defendants, and all persons, entities and others claiming rights through any such Defendant to:

    v)    Immediately cease using all CT Trade Secrets, including formula specifications, operational and production techniques and methods, research and development, pricing and cost information, technical or non-technical data, patterns, compilations, programs, devices, methods, drawings, processes, financial data, financial plans, and production plans;

    w)    Return to Plaintiff all originals and copies of materials, media (including, but not limited to electronic and archive storage media) and documents that contain, summarize, or reflect Plaintiff's Trade Secrets,

including those listed above; and provide the Court with the original unaltered electronic media on which any such Trade Secret materials are stored; and

x)   Refrain from accessing any Plaintiff Trade Secrets that may be stored in third party servers until further order of this Court.

## COUNT V
### Equitable Accounting
### (Against All Defendants)

116.   Plaintiff hereby incorporates and restates all allegations set out above as though set forth in full herein.

117.   Defendants have not paid Royalties owed to Plaintiff in breach of Section III of the MLA.

118.   Defendants have usurped, misappropriated, and seized the Trade Secrets and made unauthorized alterations to the CT formula.

119.   Defendants have engaged in other unfair and deceptive acts or practices set forth in this Complaint.

120.   Defendants have reaped unwarranted profits from their wrongful actions, in amounts to be determined at trial.

121.   Plaintiff is entitled to disgorgement of such profits, and/or for damages, as set forth above.

122. Pursuant to Section III of the MLA and the equitable powers of this Court, Plaintiff respectfully requests that the Defendants be required to render an accounting of all sales, profits, and income to the Defendants from April 25, 2014 to present date.

**Count VI**
**Pierce the Corporate Veil**
**(Against All Defendants)**

123. Plaintiff hereby incorporates and restates all allegations set out above as though set forth in full herein.

124. Georgia allows alter ego actions "to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud, or evade contractual or tort responsibility." Laureate Educ., Inc. v. Laureate Learning Ctr., Inc., 2016 U.S. Dist. LEXIS 188733, *8 (Apr. 20, 2016) (citing Paul v. Destito, 250 Ga. App. 631, 639 (2001)).

125. To justify piercing the corporate veil, "courts typically look at whether the principals commingled the assets of the company with their personal assets or otherwise confused the assets, records and liabilities of the individual and the corporation." In re Geer, 522 B.R. 365, 392 (Bankr. N.D. Ga. 2014). A court

may pierce the veil when "the owner treats the company and himself as one unit, or where the owner uses the corporate funds for personal expenses." *Id.*

126. Accordingly, "the alter ego and veil piercing doctrines under Georgia law are used as remedies for inequitable conduct." *Id.*

127. On information and belief, both Add Bac and ABI were mere alter egos or business conduits of each other.

128. On information and belief, both Add Bac and ABI were operated as alter egos or business conduits of Defendant Warren Edward Staten and Defendant Judy Staten (hereinafter collectively referred to as the "Statens").

129. On information and belief, the Statens ignored corporate formalities by comingling their personal funds with Add Bac's corporate funds.

130. On information and belief, the Statens ignored corporate formalities by comingling their personal funds with ABI's corporate funds.

131. On information and belief, the Statens, as alter egos of Add Bac and ABI, comingling the corporate funds of Add Bac with that of ABI and ABI's corporate funds with that of Add Bac.

132. On information and belief, the Statens have made and continue to make payments to themselves as individuals from Add Bac and ABI's corporate

funds, such funds being procured from the misuse and misappropriation of the CT formula.

133. On information and belief, the Statens paid Add Bac's payroll using funds out of personal banking accounts jointly owned by the Statens.

134. On information and belief, the Statens paid ABI's payroll using funds out of personal banking accounts jointly owned by the Statens.

135. On information and belief, the Statens paid Plaintiff Royalties due from Add Bac under the MLA using funds out of personal banking accounts jointly owned by the Statens.

136. On information and belief, the Statens, as the alter egos of both Add Bac and ABI, overextended the privileges and separateness of the corporate entities by sharing contract rights arising from the Agreements, including but not limited to the CT formula.

137. On information and belief, the Statens, collectively and individually, have engaged in inequitable conduct by failing to follow corporate formalities, abusing the corporate form, and commingling the corporate funds of Add Bac and ABI with their own personal funds to defeat justice, perpetrate fraud, or evade contractual responsibility.

138. Therefore, Plaintiff prays that this Court pierce the corporate veil shrouding Add Bac and ABI, thereby holding the Statens jointly and severally liable as alter egos for the liabilities, obligations, and misconduct of Add Bac and ABI.

## COUNT VII
### Punitive Damages Pursuant to O.C.G.A. § 10-1-763(b)
### (Against All Defendants)

139. Plaintiff hereby incorporates and restates all allegations set out above as though set forth in full herein.

140. Defendants had actual knowledge of the confidentiality, nondisclosure, and use limitations and restrictions applied to the Trade Secrets of Plaintiff under the Agreements.

141. Defendants were aware of the economic value of said Trade Secrets and the competitive advantage they provided.

142. In conscious disregard of the rights of Plaintiff, Defendants intentionally misappropriated Plaintiff's Trade Secrets in order to obtain an economic benefit.

143. For the aforementioned reasons, Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

144.  Because Defendants have committed a willful and malicious misappropriation of Plaintiff's Trade Secrets, this Court is authorized to award damages.

145.  Accordingly, Plaintiff prays for additional exemplary and punitive damages in an amount to be determined to deter Defendant from such wrongful conduct in the future.

### COUNT VIII
### Attorneys' Fees Pursuant to O.C.G.A. § 13-6-11
### (Against All Defendants)

146.  Defendants have acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense, thereby entitling Plaintiff to attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

147.  Defendants are liable to Plaintiff's for all attorneys' fees and expenses of litigation incurred in bringing this action.

### PRAYER FOR RELIEF

**WHEREFORE**, having fully pled, Plaintiff prays for an Order of this Court awarding it equitable and legal relief against the Defendants as follows:

1)  Granting preliminary and permanent relief against Defendants and all others associated with, under the direction of, or claiming rights through any of the Defendants, requiring each of the Defendants to:

a)   Immediately cease using all CT Trade Secrets, including formula specifications, operational and production techniques and methods, research and development, pricing and cost information, technical or non-technical data, patterns, compilations, programs, devices, methods, drawings, processes, financial data, financial plans, and production plans;

b)   Within five (5) business days, return to Plaintiff all originals and copies of the CT Formula and all other materials, media (including, but not limited to, electronic and archive storage media) and documents that contain, summarize, or reflect Plaintiff's Trade Secrets, including those listed above; and provide the Court with the original unaltered electronic media on which any such Trade Secret materials are stored;

c)   Refrain from accessing any Trade Secret information that may be stored by or on behalf of the Defendants in third party servers until further order of this Court;

d)   Refrain from performing or attempting to perform any act prohibited by the injunction directly or indirectly through any other person, entity, representative or agent; and

e)   Accomplish the actions set forth in the injunction as expeditiously as possible and certify to Plaintiff and to the Court that all obligations set forth in such injunction have been accomplished or, for those requiring ongoing compliance, shall be fully honored until further Order of this Court.

2)   Awarding Plaintiff damages on its First, Second, Third, Fourth, Seventh, and Eighth causes of action, in amounts to be determined at trial.

3)   Awarding Plaintiff actual damages on its Third cause of action in amounts to be determined at trial and including amounts equal to the Defendants' unjust enrichment from the theft, misappropriation, use and disclosure of Plaintiff's Trade Secrets pursuant to 18 U.S.C. § 1836(b)(3)(A), together with its attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

4)   Awarding Plaintiff actual damages on its Fourth cause of action in accordance with O.C.G.A. § 10-1-763, together with its attorney's fees pursuant to O.C.G.A. §§ 10-1-763, 10-1-764, and 10-1-373.

5)   Piercing the corporate veil of Add Bac and ABI, thereby holding the Statens jointly and severally liable as alter egos for the liabilities, obligations, and misconduct of Add Bac and ABI.

6)     Awarding Plaintiff on its Seventh cause of action for punitive damages against Defendants pursuant to O.C.G.A. § 51-12-5.

7)     Awarding Plaintiff on its Eighth cause of action for attorney's fees pursuant to O.C.G.A. § 13-6-11.

8)     Requiring the Defendants to conduct an accounting of any and all income and profits derived from use of the CT formula or any alteration of the CT formula from April 25, 2014 until the present date; and

9)     For such other and further relief as is just and proper.

Respectfully submitted this 19th day of July, 2021.

>         /s/   David L. Walker Jr.
> David L. Walker, Jr.
> Georgia Bar No. 731663
> Lawrence O. Anderson
> Georgia Bar No. 017660
> Anthony Cammarata Jr.
> Georgia Bar No. 375153

FLINT, CONNOLLY & WALKER, LLP
131 East Main Street
Canton, Georgia 30114
P: (770) 720-4411  F: (770) 720-3030
Email: dwalker@fcwlawfirm.com
*Attorneys for Plaintiff Wildwood Consulting, LLC*

## 7.1 CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D of the Northern District of Georgia, I hereby certify that this document was prepared in Times New Roman font, 14 point, pursuant to Local Rule 5.1C.

Respectfully submitted this 19th day of July, 2021.

/s/   David L. Walker Jr.
David L. Walker, Jr.
Georgia Bar No. 731663

FLINT, CONNOLLY & WALKER, LLP
131 East Main Street
Canton, Georgia 30114
P: (770) 720-4411  F: (770) 720-3030
Email: dwalker@fcwlawfirm.com
*Attorneys for Plaintiff Wildwood Consulting, LLC*

## MANUFACTURING LICENSE AGREEMENT

**THIS Manufacturing License Agreement** ("Agreement") is made effective this
25ᵗ day of April , 2014 ("Effective Date") between Wildwood Consulting LLC
("Wildwood"), of 1006 Wildwood Crossing, Georgetown, Texas 78633, a limited liability
corporation duly incorporated under the laws of the State of Texas, and Rogers Finishing LLC
dba Add Bac ("Add Bac"), of 1001 Riverbend Road, Dalton, Georgia 30721, a corporation
duly incorporated under the laws of the State of Georgia (collectively, "the Parties").

**WHEREAS**, Wildwood is the sole owner of a unique polyurethane coating
technology ("CT"), and as the sole owner, Wildwood has the sole right to grant a license for
the utilization of the CT;

**WHEREAS**, Add Bac desires to become an exclusive licensee of CT for utilization in
Add Bac's Manufacturing Processes pursuant to the terms and conditions hereinafter set
forth; and

**WHEREAS**, Wildwood is willing to grant an exclusive license for the utilization of
CT to Add Bac for utilization in Add Bac's Manufacturing Processes pursuant to the terms
and conditions hereinafter set forth;

**NOW THEREFORE**, in consideration of the representations and mutual covenants
contained herein and other good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the Parties agree as follows:

I. **DEFINITIONS**
   a. "CT" means that unique polyurethane coating technology known to the Parties
      as WC-001A and solely owned by Wildwood including all patents therefor
      now existing, pending, or existing hereafter regarding such formula, if any.
      "CT" specifically excludes, at this time , the polyol carpet coating formulas
      known as STC 708 Poly and AB Poly which are currently subject to pending
      litigation and all parties hereby affirm that no such information has been, or
      will be, shared regarding such formulations until such time as allowed by law,
      it at all.
   b. "Manufacturing Process" means the manufacture by Add Bac of any product
      for any purpose whatsoever, whether for sale, lease, marketing, promotion, or
      any other purpose.

1



PLAINTIFF'S EXHIBIT A

II. **GRANT OF LICENSE**

    **a.** During the term hereof, Wildwood hereby grants to Add Bac the exclusive right to utilize the CT solely in connection with the Manufacturing Processes.

    **b.** The right and license granted pursuant to this Agreement shall not be construed to confer any rights or licenses by implication, estoppel or otherwise as to any technology not specifically identified in this Agreement.

    **c.** Upon the termination of this Agreement for any reason whatsoever, the rights of Add Bac hereunder shall cease, and Add Bac shall have no right thereafter to utilize the CT.

    **d.** Add Bac shall have no right to sub-license the CT without the prior written consent of Wildwood, which Wildwood may withhold or condition in its sole discretion.

    **e.** Subject to the rights granted herein, Wildwood retains title and ownership of the CT.

III. **PAYMENT OF ROYALTY**

    a. As consideration for the license granted herein, Add Bac will pay to Wildwood a royalty ("Royalty"). The Royalty is defined as 50% of profit ("Profit"). Profit is defined by identifying the difference between (1) a fixed estimated cost of Add Bac's current polyurethane backing material and (2) the actual cost of polyurethane backing material supplied by Wildwood utilizing the CT, and then reducing this difference by any Damages.

        i. For the purposes of the definition of Profit, the fixed estimated cost of Add Bac's current polyurethane backing material is deemed $0.77554 per pound.

        ii. For the purposes of the definition of Profit, the actual cost per pound of polyurethane backing material supplied by Wildwood utilizing the CT is determined as follows:

            1. Actual cost will be determined utilizing actual invoices for raw materials comprising the polyurethane backing material supplied by Wildwood utilizing the CT;

            2. Total pounds of polyurethane backing material supplied will be determined by dividing the pounds of isocyanate utilized in the polyurethane backing material supplied by Wildwood utilizing the CT by .1385; and

            3. Actual cost (as defined above) divided by total pounds of polyurethane backing material supplied (as defined above) will yield actual cost per pound.

        iii. For purposes of the definition of Profit, Damages means the total amount of any damages or chargeback claimed by, and actually paid to,

2

any Add Bac customer or third party as a result of a claim of (a) defective polyurethane backing utilizing the CT, and/or (b) defective product, when the claimed defect is reasonably attributable to defective polyurethane backing utilizing the CT. Any such customer claim is not required to be independently verified or proven in order to be deemed Damages; rather, the claim must be reasonably attributable to defective polyurethane backing based upon (a) the customer's or third party's description of the cause of the claim, and/or (b) Add Bac's reasonable investigation of the cause of the claim. Wildwood retains the right to participate in any inquiry and determination regarding defective coatings for the determination of "Damages".

b. The Royalty on each respective piece of finished product utilizing the CT will be paid to Wildwood within 31 days after the first day of the first month following the shipment from Add Bac of each respective piece of finished product utilizing the CT.

c. With each Royalty payment, Add Bac shall submit to Wildwood a written report that sets forth in detail the calculation of the Royalty payment, along with proof of purchase of isocyanate utilized in the polyurethane backing material supplied by Wildwood utilizing the CT.

d. As further consideration for the license granted herein, Add Bac will pay to Wildwood an initial payment of $30,000 ("Initial Payment"). The following provisions apply to the Initial Payment:

  i. In the event the total Royalties fail to exceed $30,000 during the term hereof, Wildwood shall be liable to Add Bac for the difference between the Initial Payment and the total Royalties, and Wildwood shall pay the difference to Add Bac within 30 days of the expiration of the term hereof.

  ii. In the event the total Royalties exceed $30,000 during the term hereof, Add Bac's obligation to pay any earned Royalty in excess of $30,000 begins only when such Royalty in excess of $30,000 is earned and is due under the time requirements set forth above, and only to the extent that the earned Royalty exceeds $30,000.

## IV.   TRANSFER OF THE CT

a. Beginning on or about the Effective Date, and during the term hereof, Wildwood shall instruct Add Bac in the CT in such detail to enable Add Bac to utilize the CT in the Manufacturing Processes.

b. Unless the prior written approval of Wildwood is obtained, Add Bac may not modify or alter the CT in any manner during the term hereof.

3

    c.  The CT may be modified and improved during the term of this Agreement, provided, however:

        i.  Any modification or improvement of the CT developed solely by Wildwood, without any contribution of support, efforts, or resources of Add Bac, shall be the sole property of Wildwood free of any claim of Add Bac;

        ii.  Any modification or improvement of the CT developed solely by Wildwood, without any contribution of support, efforts, or resources of Add Bac, shall only be utilized in any Manufacturing Process upon the express consent of Add Bac.

        iii.  Any modification or improvement of the CT developed with contribution of support, efforts, and/or resources of Add Bac shall be the joint property of Wildwood and Add Bac, with each Party owning an undivided 50% interest in the property.  Both parties must agree in writing in order for joint ownership to become effective.

## V.   QUALITY CONTROL AND APPROVAL

    a.  Any product produced in the Manufacturing Process utilizing the CT shall be of standard marketable quality, and shall be in conformity with a standard sample approved by Wildwood.

    b.  Upon request by Wildwood, Add Bac shall submit to Wildwood, at no cost to Wildwood and for approval as to quality, a sample of any product that Add Bac intends to manufacture utilizing the CT.  Once any such sample has been approved by Wildwood, Add Bac shall not materially depart therefrom without Wildwood's prior written consent.

    c.  The Parties shall negotiate in good faith to resolve any quality control issues perceived by either of the Parties.

## VI.   TERM

    a.  This term of the Agreement shall commence on the Effective Date and will expire five (5) years from the Effective Date, unless one of the following events occurs:

        i.  Add Bac breaches the Agreement in any material respect, including but not limited to the obligation to pay a Royalty when due, and Wildwood provides 30 days written notice to Add Bac, and Add Bac fails to cure the material breach within such 60 day period; in this event, the Agreement shall terminate upon expiration of the 60 day period.

        ii.  Wildwood breaches the Agreement in any material respect, and Add Bac provides 30 days written notice to Wildwood, and Wildwood fails

          to cure the material breach within such 60 day period; in this event, the Agreement shall terminate upon expiration of the 60 day period.

    iii.  Either Party discovers that the other Party made a material misrepresentation of fact in the Agreement and provides written notice to the other of the material misrepresentation and of the termination. In this event, termination occurs upon receipt of the written notice.

b.  Upon expiration of the first term hereof, Add Bac shall have the option to renew this Agreement for a second five (5) year term.

c.  Upon any expiration of the Agreement, Add Bac shall be obligated to pay the Royalty for any products manufactured utilizing the CT during the term of the Agreement.

## VII.  DISPUTE RESOLUTION

a.  If any dispute arises under this Agreement, the Parties shall negotiate in good faith in an attempt to resolve the dispute. If the dispute cannot be resolved after good faith negotiation, the Parties shall submit the dispute to mediation prior to filing suit in any state or federal court. Unless otherwise agreed by the Parties, the mediation shall occur in Whitfield County, Georgia, with a time, date, place, and mediator selected by the Parties, or in absence of an agreement upon time, date, place, and mediator, each Party will select a mediator, and the two selected mediators will then select a third mediator to mediate the dispute at a time, date, and place of the third mediator's choosing.

b.  This Agreement will be construed consistent with the law of the State of Georgia, and the venue for any action under this agreement will lie exclusively in the state and federal courts encompassing Whitfield County, Georgia. Upon filing suit, either Party shall be entitled, upon motion, to a judicial order referring the case to arbitration with Judicial Arbitration and Mediation Services, Inc. (JAMS) in Atlanta, Georgia.

## VIII.  TRANSFER OF RIGHTS; THIRD PARTIES

a.  Neither Party shall have the right to assign its interests in this Agreement to any other party, unless the prior written consent of the other Party is obtained. Subject to the foregoing, this Agreement shall be binding up the Parties hereto and their respective successors and permitted assigns.

b.  Both Parties represent and covenant that there are no third-party beneficiaries of this Agreement.

IX.     **INDEMNIFICATION**. Wildwood shall indemnify Add Bac from any claim by a third party that Add Bac utilization of the CT infringes or otherwise violates any copyright, trademark or other proprietary right of a third party, or unjustly enriches Add Bac.

X.      **CONFIDENTIALITY**.
   a.   Each Party shall keep the specific terms of this Agreement confidential from third parties, except as otherwise authorized by written consent provided by one Party to the other.
   b.   Both Parties may, in connection with this Agreement, disclose to the other Party information considered confidential and proprietary information held by the disclosing Party ("Confidential Information"). Confidential Information shall include information identified as confidential in nature by the disclosing Party at the time of disclosure. Confidential Information shall also include information which by its nature is normally and reasonably considered confidential, or any other information which provides the disclosing Party with a competitive advantage. Neither Party shall disclose such Confidential Information to any third party without the prior written consent of the disclosing Party.
   c.   The confidentiality obligations herein shall survive the termination of this Agreement.

XI.     **FURTHER ASSURANCES**. Each party shall and will, from time to time and at all times hereafter upon every reasonable request to do so, make, do execute, and deliver, or cause to be made, done, executed and delivered, all such further actions, deeds, assurance and things as may be reasonably required for more effectually implementing and carrying out the true intent and meaning of this Agreement.

XII.    **ENTIRE AGREEMENT**. This Agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written. This Agreement supersedes any prior written or oral agreements between the parties.

XIII.   **SECTION HEADINGS**. The section headings contained herein are for convenience in reference and are not intended to define or limit the scope of any provision of this Agreement.

XIV.    **AMENDMENT**. This Agreement may only be modified or amended if the modification or amendment is made in writing and is signed by both parties.

XV.    **CONSTRUCTION**.  This Agreement is the product of a joint effort by the Parties. As such, it shall not be construed more strictly against one Party or the other.

XVI.    **SEVERABILITY**. If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid or enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

XVII.    **WAIVER OF CONTRACTUAL RIGHT**. The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

XVIII.    **NOTICE.** All notices or payments required to be sent to either party shall be in writing at the above addresses and sent by First Class or Certified Mail. Notice shall not be deemed received or effective unless and until actually received. Either Party may change their mailing address by written notice to the other.

   **IN WITNESS WHEREOF**, THE Parties have caused this Agreement to be executed by their duly authorized representative on the date and year first above written.

[SIGNATURES ON NEXT PAGE]

**Rogers Finishing LLC dba Add Bac**

_Ed Staten_
Signature

_Ed STATEN_
Printed Name

_Pres._
Title


**Wildwood Consulting LLC**

_Timothy Croley_
Signature

_Timothy Croley_
Printed Name

_President_
Title

_Donald Robertson_

8

## CONFIDENTIALITY/NONDISCLOSURE AGREEMENT

This Confidentiality/Nondisclosure Agreement ("Agreement") is made as of March 26, 2014, between WILDWOOD CONSULTING LLC, a Texas limited liability company whose address is 1006 Wildwood Crossing, Georgetown, Texas 78633 ("Company") and ADD BAC INC., a Georgia corporation whose address is 1001 Riverbend Road, Dalton, Georgia 30721 ("Receiving Party").

### W I T N E S S E T H

WHEREAS, Receiving Party has requested information from Company in connection with consideration of a manufacturing and licensing transactional relationship between Receiving Party and Company.

WHEREAS, in the course of consideration of the possible transaction or relationship, Company may disclose to Receiving Party confidential, important, and/or proprietary trade secret information concerning Company and its activities.

THEREFORE, the parties agree to enter into a confidential relationship with respect to the disclosure by Company to Receiving Party of certain information.

1.      **Confidential Information**

As used in this Agreement, "Confidential Information" shall mean any facts, opinions, conclusions, projections, data, information, trade secrets or know-how relating to any research project, work in process, future development, engineering, manufacturing, marketing, financial or personnel matter relating to the Company, its present or future products, technology, formulas, recipes, processes, sales, customers, employees, investors, prospects, markets or business, whether communicated orally or in writing or obtained by the Receiving Party through observation or examination of the Company's facilities or procedures.

2.      **Identification of Confidential Information**

It is presumed that all information provided by the Company to the Receiving Party is Confidential Information for purposes of confidentiality and nondisclosure.    If any information is not Confidential Information, the Company will affirmatively indicate the information disclosed that is not Confidential Information.

3.      **Exclusions**

Receiving Party, however, shall have no liability to the other party, under this Agreement with respect to the disclosure and/or use of any such Confidential Information that it can establish:

> (a)      has become generally known or available to the public without breach of this Agreement by the Receiving Party;
>
> (b)      has been independently developed by the Receiving Party without use of or reference to the Confidential Information by persons who had no access to the Confidential Information;
>
> (c)      has been approved for release or use by written authorization of the Company.


PLAINTIFF'S EXHIBIT
B

4.        Detailed Enumeration of Receiving Party's Obligations

The Receiving Party represents, warrants and covenants to the Company, each of the following:

The Receiving Party shall, indefinitely, hold any Confidential Information in the strictest confidence and will not disclose any Confidential Information to any person or entity whatsoever, absent the prior express written instruction, signed by the president or chief executive officer of the Company. The Receiving Party shall take all steps necessary to ensure that any Confidential Information us held in the strictest confidence and that the terms and conditions of this Agreement are strictly adhered to by the Receiving Party and its employees and agents.

The Receiving Party may provide access to the Confidential Information to its authorized officers and employees on, and only on, a need to know basis which is directly and solely for the authorized purposes under this Agreement; provided, however, that prior to any such access, Company shall provide to the Receiving Party the identity of any such individual and a written listing of the material to which that person will have access is maintained and provided to the Company prior to access. In any event, any such person being provided with access to any of the Confidential Information shall have executed a Confidentiality and Nondisclosure Agreement in a form acceptable to the Company, and its legal counsel, prior to obtaining access and a copy thereof shall be provided to the Company.

Notwithstanding the provisions of Section 3, except as to authorized officers and employees employed by the Receiving Party and as to whom the Receiving Party is in compliance with the provisions of Section 3, in no event shall the Receiving Party provide, inadvertently or otherwise, any of the Confidential Information to any person or entity who is directly or indirectly engaged, or who is planning to directly or indirectly engage in competition with the Company.

Receiving Party, nor any person to whom any of the Confidential Information is directly or indirectly disclosed by Receiving Party, will make, have made, use or sell, whether for its own purposes or for any other, any copies of Confidential Information, or any part of the contents thereof, unless express written instruction, signed by the president or chief executive officer of the Company, has been given prior to any such action or use by Receiving Party.

Receiving Party will maintain a log of any written Confidential Information provided to it by the Company and shall provide a copy thereof to the Company immediately upon request, with a certification that it is an accurate and complete listing thereof.  Such log shall show the description of the Confidential Information provided, the date upon which such Confidential Information was received, the identification of any persons to whom access to such Confidential Information has been granted and the number, if any, of copies made of such Confidential Information, as well as the exact whereabouts of each such copy and all notations, compilations or similar work product generated through use of the Confidential Information.

The standard of care to be utilized by the Receiving Party in the performance of its representations, warranties, covenants and obligations set forth in this Agreement relative to its treatment of the Confidential Information shall be the standard of care, but in no event less than a reasonable standard of care, utilized by Receiving Party in treating its own most proprietary, secret and confidential information, and such information shall not be subject to any right of waiver.

Receiving Party further agrees to indemnify the Company against any loss or liability resulting from, or arising in connection with, unauthorized use or disclosure of the Confidential Information by the Receiving Party or its directors, employees or other representatives.

5.      **Permitted Disclosures**

Receiving Party may disclose the Confidential Information to its responsible employees and professional advisers with a bona fide need to know such Confidential Information, but only to the extent necessary to carry out the Business Purpose and only if such employees are advised of the confidential nature of such Confidential Information and the terms of this Agreement and are bound by a written agreement or by a legally enforceable code of professional responsibility to protect the confidentiality of such Confidential Information.

6.      **Required Disclosures**

Receiving Party may disclose the Confidential Information if and to the extent that such disclosure is required by order of a court of competent jurisdiction, provided that the Receiving Party uses reasonable efforts to limit the disclosure by means of a protective order or a request for confidential treatment and provides the Company a reasonable opportunity to review the disclosure before it is made and to interpose its own objection to the disclosure.

7.      **Copies and Abstracts**

Receiving Party shall not make or use any copies, synopses or summaries of oral or written material, photographs or any other documentation or information made available or supplied by the Company to the Receiving Party except such as are necessary for the Receiving Party's internal communications in connection with carrying out the Business Purpose. All such copies and abstracts must themselves be marked as confidential and the Receiving Party shall maintain a written record of the distribution of all such copies and abstracts.

8.      **Return of Confidential Information**

Upon the Company's request, the Receiving Party will promptly return to the Company all copies of the Confidential Information, will destroy all notes, abstracts and other documents that contain Confidential Information, and will provide the Company a written certification of an officer of the Receiving Party that it has done so.

9.      **No Representations as to Accuracy**

The Company warrants that it has the right to make the disclosure of Confidential Information contemplated by this Agreement.  In providing the Confidential Information under this Agreement, the Company makes no representation, either express or implied, as to its adequacy, sufficiency, or freedom from defect of any kind, including freedom from any patent infringement that may result from the use of such Confidential Information, and the Company shall not incur any responsibility or obligation whatsoever by reason of such Confidential Information.

10.     **Retention of Legal Rights**

The Company retains all rights and remedies with respect to the Confidential Information afforded it under the patent and other laws of the United States and the States both during and after the term of this Agreement, including without limitation any trade secret or other laws designed to protect proprietary or confidential information.

11.    No Creation of Ownership Rights

Nothing in this Agreement, nor any action taken by the Receiving Party, including, without limitation, any payment of monies by the Receiving Party to the Company, during any discussions prior to the consummation of the proposed acquisition or other business relationship shall be construed to convey to the Receiving Party any right, title or interest in the Confidential Information, or any license to use, sell, exploit, copy or further develop in any way any Confidential Information. No license is hereby granted or implied under any patent, copyright or trademark, any application for any of the foregoing, or any trade name, trade secret or other proprietary information, in which the Company has any right, title or interest.

12.    Public Announcement

All public announcements or other statements to third parties related to the discussions referred to in the recitals of this Agreement by either of the parties shall be subject to prior approval by the other party, except for such statements as may be necessary, in the opinion of their respective counsel, to comply with the requirements of any law, governmental order, or regulation.

13.    Injunctive Relief

Receiving Party acknowledges that the unauthorized use or disclosure of the Confidential Information would cause irreparable harm to the Company. Accordingly, the Receiving Party agrees that the Company will have the right to obtain an immediate injunction against any breach or threatened breach of this Agreement, as well as the right to pursue any and all other rights and remedies available at law or in equity for such a breach.

14.    Term of Agreement

This Agreement applies to all Confidential Information that is disclosed by the Company to the Receiving Party during the period that begins on the date set forth above and extends in perpetuity thereafter. The obligations of this Agreement will remain in effect in perpetuity after the date of the last disclosure of Confidential Information hereunder.

15.    Applicable Law

This Agreement will be construed, interpreted and applied in accordance with the laws of the State of Texas (excluding its body of law controlling conflicts of law).

16.    Notice

Any notice, communication, offer, acceptance, request, consent, reply, or advice (collectively referred to here as "Notice"), provided or permitted to be given, served, made, or accepted by any party or person to any other party or parties, person or persons, hereunder must be in writing, addressed to the party to be notified at the address set forth below such party's name on the signature page of this Agreement, or such other address of which one party has notified the other in writing pursuant to the terms of this Section, and must be served:  (a) by facsimile or other similar electronic method with a hard copy of such notice sent no later than the next business day as specified under (b) below; (b) by depositing the same in the United States mail, certified or registered mail, return receipt requested and postage paid; or (c) by personal delivery.  Notice shall be effective: (1) twenty-four (24) hours after being transmitted by facsimile or other similar electronic method, provided a hard copy is sent as specified in (a) above; (2) seventy-two (72) hours following being properly mailed; or, (3) immediately upon personal delivery.  Notice otherwise given is effective only if and when received.

17.     **Entire Agreement, Amendments, Prior Discussions**

This Agreement constitutes the final, exclusive and complete statement of the parties agreement respecting the subject matter addressed herein.  This Agreement may not subsequently be amended or modified except by a writing signed by both parties hereto.  The Receiving Party hereby confirms that any information disclosed to it by the Company, or any discussions held between the parties, prior to the date of this Agreement shall be subject to the terms of this Agreement.

18.     **Successors and Assigns**

This Agreement shall be binding on, and shall inure to the benefit of, the parties to it and their respective legal representatives, successors and assigns.

19.     **Survival**

This Agreement shall survive the cessation of any discussions between the parties with regard to the proposed acquisition or other business relationship.

20.     **Severability**

If any provision of this Agreement is declared void or unenforceable, such provision shall be severed from this Agreement, which shall otherwise remain in full force and effect.

21.     **Counterparts**

This Agreement may be signed in one or more counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

22.     **Dispute Resolution by Arbitration**

All disputes in any manner relating to or arising out of this Agreement shall be resolved through binding arbitration under the auspices of the American Arbitration Association, or such other arbitration association as the parties may agree.  The decision or award of the arbitrator shall be binding upon the parties and shall be enforceable by a judgment entered in a court having jurisdiction.  In the event that the arbitrator determines there is a prevailing party in the arbitration, the prevailing party shall recover from the other party all costs of arbitration, including all reasonable attorneys' fees incurred by the prevailing party.  Notwithstanding the foregoing, this provision shall not be construed to limit a party's right to seek preliminary or permanent injunctive relief in any court of competent jurisdiction.

23.     **Attorneys' Fees to Prevailing Party in Any Legal Action Brought To Enforce or Interpret Agreement**

In the event any suit or other action is commenced to construe or enforce any provision of this Agreement, the prevailing party, in addition to all other amounts such party shall be entitled to receive from the other party, shall be paid by the other party a reasonable sum for attorneys' fees and costs.

**[[SIGNATURE PAGE FOLLOWS]]**

COMPANY:

Wildwood Consulting LLC
a Texas limited liability company

By: _____
     Tim Croley, Manager


RECEIVING PARTY:

Rogers Finishing LLC dba Add Bac


By: _____     4/25/14
     Ed Staten, Managing Member

*Donald Robertson*


CONFIDENTIALITY NONDISCLOSURE AGREEMENT
Wildwood Consulting LLC
Page 6 of 6



COPPEDGE
MICHMERHUIZEN
RAYBURN | Attorneys At Law

Warren Coppedge | Steve Michmerhuizen | Bryan Rayburn

508 South Thornton Avenue | Dalton, Georgia 30720
$p$ (706)226-0040 | $f$ (706)226-0050

May 14, 2019

**VIA ELECTRONIC MAIL** (dwalker@fcwlawfirm.com)

David L. Walker, Jr.
Flint Connolly Walker LLP
131 East Main Street
Canton, Georgia 30114

     Re:    Wildwood Consulting, LLC

David,

I received your letter dated May 10, 2019 on Monday, May 13. This letter responds to your letter of that date.

In response to your first inquiry, I am authorized to respond on behalf of Add Bac, Inc. and Ed Staten as well as Rogers Finishing, LLC. Neither your April 30, 2019 letter nor your May 10, 2019 letter make it clear to me what connection you believe Judy Staten has to this matter. If you can explain to me the connection she has to this dispute, then I can advise you if I represent her.

Derek Jones' Confidentiality/Nondisclosure Agreement has been provided to you. I would consider Ed Staten's signature on the original agreement to be effective for him individually as well as the company.

In regard to Tim Brown, my clients believe they have acted appropriately in accordance with the Manufacturing License Agreement and the Confidentiality/Nondisclosure Agreement at all times. My understanding is that Mr. Croley voluntarily shared information about product formulation with Mr. Brown, without ever representing to Mr. Brown that the information was confidential. Whether the information Mr. Croley shared was confidential, whether Mr. Brown was under any duty of confidentiality, and whether any confidentiality requirement was waived, are questions that are beyond the scope of this letter. However, I feel quite confident that Mr. Brown would agree not to disclose the information Mr. Croley shared, as Mr. Croley's information has been shown to have practically no commercial value.

In regard to the written reports, I was out of the office the majority of last week and when I was in the office, my schedule was booked solid all day with appointments. I have not had a chance to review the written reports and I do not believe I will have them to you by May 15, 2019. I will provide them as soon as I am able. As I mentioned in my previous letter, I do not find it



PLAINTIFF'S EXHIBIT

C

David L. Walker, Jr.
May 14, 2019
Page two of two

reasonable for your client to avoid requesting the reports for five years and then demand them urgently at the conclusion of the five-year period.

We should be able to agree on a mediator. May 21 and 22 do not work for me or my clients. Please propose alternative dates and a mediator in Whitfield County.

Sincerely,

COPPEDGE, MICHMERHUIZEN, RAYBURN | Attorneys at Law

Steve Michmerhuizen

cc:     Client (via electronic mail)



Douglas H. Flint
John F. Connolly
David L. Walker, Jr.
Michael P. Bain
Andrew T. Smith
Kristyn L. Long
Anthony Cammarata, Jr.

*of counsel:*
Lawrence O. Anderson

April 24, 2019

Rogers Finishing, LLC d/b/a Add Bac
1470 Dawnville Road NE
Dalton, Georgia 30721
**Via Federal Express Overnight**

Add Bac, Inc.
1001 Riverbend Road
Dalton, Georgia 30720
**Via Federal Express Overnight**

Edward Staten
1470 Dawnville Road NE
Dalton, Georgia 30721
**Via Federal Express Overnight**

Judy Staten
1470 Dawnville Road NE
Dalton, Georgia 30721
**Via Federal Express Overnight**

RE:  Wildwood Consulting LLC

Mr. Edward Staten and Mrs. Judy Staten:

This firm represents Timothy Croley and Wildwood Consulting LLC ("Wildwood") regarding Wildwood's contracts with you, Rogers Finishing, LLC d/b/a Add Bac, and Add Bac, Inc. (hereinafter collectively referred to as "Add Bac"), and the protection of Wildwood's trade secrets, including without limitation, its unique polyurethane coating technology (the "CT") and the formula by which it is derived. Please forward all future communications regarding this matter to this firm's address.

As you are aware, Add Bac entered into a Manufacturing License Agreement and Confidentiality/Nondisclosure Agreement with Wildwood on April 25, 2014 for the purpose of acquiring a temporary, exclusive license to use the CT from Wildwood (the "Contracts"). Under the Confidentiality/Nondisclosure Agreement, all information provided by Wildwood to Add Bac, including but not limited to the formula by which the CT is derived, is presumed to be "Confidential Information", and Add Bac represented, warranted, and covenanted that it will hold such Confidential Information in the strictest confidence and not disclose such Confidential

131 East Main Street ▪ Canton, Georgia 30114 ▪ (770) 720-4411 Tel. ▪ (770) 720-3030 Fax ▪ info


PLAINTIFF'S
EXHIBIT
D

Letter to Add Bac
April 24, 2019
Page 2

Information to any person or entity whatsoever, absent *prior* written consent from Wildwood. Add Bac further agreed that it will take all steps necessary to ensure that the terms and conditions of the Confidentiality/Nondisclosure Agreement are adhered to by its employees and agents. Further, Add Bac is only permitted to provide access to the Confidential information to authorized officers and employees on, and only on, a need to know basis; provided that, prior to allowing any such access, Add Bac is required to provide Wildwood the identity of such individual and any person provided access must have executed a Confidentiality and Nondisclosure Agreement in a form acceptable to Wildwood prior to obtaining access.

While visiting Add Bac's facilities, Mr. Croley has noticed the presence of certain individuals while the CT was being produced and used that were not authorized officers and employees of Add Bac and that Wildwood had not otherwise approved pursuant to the Confidentiality/Nondisclosure Agreement. On one such occasion, Mr. Croley recognized an individual named Tim Brown, a person having ordinary skill in the art, present while the CT was being produced and used. As a result, Wildwood is concerned that Add Bac has disclosed Confidential Information related to the CT to such individuals, including but not limited to Mr. Brown, in violation of the Confidentiality/Nondisclosure Agreement.

It is critical to Wildwood's business that the CT formula and other Confidential Information remain protected, and any actual or threatened disclosure or misappropriation this information will cause Wildwood irreparable harm. Accordingly, Wildwood hereby demands that Add Bac produce a record of any and all individuals to whom Add Bac has disclosed the Confidential Information of Wildwood, including but not limited to the formula to the CT. The record produced for each and every such individual must include: (i) the individual's name and contact information; (ii) the individual's relationship to Add Bac; (iii) a detailed description identifying the Confidential Information disclosed to the individual; (iv) the date upon which such Confidential Information was disclosed to the individual; (v) the purpose for which such Confidential Information was disclosed to the individual; and (vi) a copy of the Confidentiality and Nondisclosure Agreement executed by the individual *prior* to any such disclosure.

An additional concern arose during Mr. Croley's most recent visit to Add Bac's facilities, wherein Donald Robertson, Add Bac's plant manager, admitted to Mr. Croley that Add Bac had altered Wildwood's proprietary CT formula by mixing the approved polyol with a non-approved polyol (accomplished by mistakenly unloading a truckload of approved polyol into a tank containing a non-approved polyol). Add Bac was fully aware that this alteration was prohibited under the Manufacturing License Agreement without prior written approval of Wildwood. Nevertheless, instead of notifying Wildwood of the mistake, Add Bac made the decision to continue production with the polyol blend despite the potential adverse effects such decision would have on the quality of the CT. Add Bac's actions in doing so were in breach of the Quality Control and Approval provisions of Section V of the Manufacturing License Agreement.

Moreover, pursuant to the Manufacturing License Agreement, Add Bac is required to provide to Wildwood a "written report that sets forth in detail the calculation of the Royalty payment, along with proof of purchase of isocyanate utilized in the polyurethane backing material supplied by Wildwood utilizing the CT" with each royalty payment. To date, Wildwood has received no such reports. As such, Wildwood hereby demands that Add Bac produce written

Letter to Add Bac
April 24, 2019
Page 3

reports complying with the terms of the Manufacturing License Agreement for each and every royalty payment that Add Bac has made to Wildwood. Not only are such reports required under the Manufacturing License Agreement, but Wildwood's request for such reports is reasonable in light of the fact that Add Bac owes a substantial amount of money to Wildwood for unpaid Royalty payments, and the reports will provide Wildwood the information necessary to accurately calculate Add Bac's total indebtedness.

While the reports are necessary for Wildwood to compute a precise amount of unpaid Royalty payments owed by Add Bac, Wildwood is certain that the unpaid royalties exceed $350,000.00. As you are aware, the Royalty payment is due to Wildwood on each piece of finished product utilizing the CT within thirty-one (31) days after the first day of the first month following the shipment from Add Bac of such product. Notice is hereby provided that Add Bac is in breach of the Manufacturing License Agreement for failure to pay Royalty payments when due.

As the term of the Manufacturing License Agreement is nearing expiration, you are also reminded that said agreement states that "Add Bac may not modify or alter the CT in any manner during the term," unless Add Bac obtains prior written approval of Wildwood. Any modification, alteration, or reverse engineering of the CT formula by Add Bac, or by anyone else on behalf of Add Bac, will not only be deemed a breach of the Contracts but will also be a violation by Add Bac of the Georgia Trade Secrets Act of 1990 and will entitle my client to immediate equitable and legal relief.

Wildwood takes these matters, particular the protection of its proprietary formula, very seriously, and I strongly urge you to govern your actions accordingly. Wildwood encourages you to re-examine all of the provisions of the Contracts to ensure that you are fully informed and act in full compliance with same.

Be advised, should you choose to ignore your obligations under the Contracts or Wildwood's demands herein, Wildwood _will_ take legal action against you. This legal action may include, but will not necessarily be limited to, a civil action brought against you in federal court for the Northern District of Georgia for a temporary restraining order and injunctive relief, as well as compensatory and punitive damages, attorneys' fees, and costs of litigation. Further, if you have not provided all of the documents demanded by Wildwood on or before **May 2, 2019**, Wildwood will file suit against you for breach of contract.

If you have any questions in this regard, you may contact my office.

Regards,
FLINT, CONNOLLY & WALKER, LLP

David L. Walker, Jr.
Attorney at Law

DLW/sh