IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| WILDWOOD CONSULTING, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION NO. |
| | : | 4:21-CV-00138-LMM |
| ROGERS FINISHING, LLC /d/b/a/ | : | |
| ADD BAC; ADD BAC, INC.; | : | |
| WARREN EDWARD STATEN; and | : | |
| JUDY STATEN, | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

This case comes before the Court on Defendants Rogers Finishing, LLC d/b/a Add Bac; Add Bac, Inc. ("ABI"); Warren Edward Staten; and Judy Staten's Motion to Dismiss [11]. After due consideration, the Court enters the following Order.

**I.   BACKGROUND[1]**

This case arises from the alleged misuse, disclosure, and misappropriation of Plaintiff's technology and trade secrets. Plaintiff Wildwood Consulting, LLC

---

[1] The relevant facts are taken from Plaintiff's Complaint and assumed to be true. Because Plaintiff is the non-moving party, the alleged facts are construed in the light most favorable to Plaintiff.

("Wildwood") alleges that it developed a unique and proprietary polyurethane coating technology ("the CT") and licensed this technology to Defendants under the parties' Manufacturing License Agreement ("MLA"). The MLA was allegedly entered into on April 25, 2014, and it granted a license to use the CT for a term of five years. In addition, the parties also entered a "Confidentiality/Nondisclosure Agreement" ("the NDA") on March 26, 2014. Plaintiff alleges that its trade secrets and other components of the CT were protected from unauthorized use and disclosure under the terms of both the MLA and NDA.[2]

Prior to the expiration of the MLA, Plaintiff's president, Timothy Croley, visited Defendants Add Bac and ABI's facilities and allegedly observed violations of the MLA and NDA. Specifically, Plaintiff alleges that Mr. Croley (1) noted that certain individuals who were present while the CT was being produced were not the authorized officers or employees of Defendants Add Bac and ABI that had been approved for such access pursuant to the NDA; (2) discovered that Defendants Add Bac and ABI had disclosed confidential information related to the CT to unauthorized individuals; and (3) learned that Defendants had altered the CT's proprietary formula by using a non-approved polyol. Plaintiff additionally alleges that Defendants have continued to use and benefit from the

---

[2] Plaintiff has included copies of the MLA and NDA as exhibits to its Complaint, so the Court may consider these agreements at this stage. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th Cir. 1997) ("[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto." (citation omitted)).

CT but have failed to submit certain written reports and pay royalties for such use, all of which is required under the terms of the MLA.

Plaintiff filed this suit on July 19, 2021. Dkt. No. [1]. Plaintiff alleges that Defendants' conduct violated both the MLA and NDA, and Plaintiff brings claims for breach of contract (Counts I and II), violations of the Defend Trade Secrets Act ("DTSA") and Georgia Trade Secrets Act (Counts III and IV), equitable accounting (Count V), piercing the corporate veil (Count VI), punitive damages (Count VII), and attorneys' fees (Count VIII). See id. Defendants have moved to dismiss Plaintiff's Complaint in its entirety, arguing that because Plaintiff's trade secrets claims in Counts III and IV fail as a matter of law, so too do the rest of Plaintiff's claims. See Dkt. No. [11-1].

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is

plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id. (citing Twombly, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006)). However, this principle does not apply to legal conclusions set forth in the complaint. Iqbal, 556 U.S. at 678.

### III. DISCUSSION

Plaintiff's Complaint contains eight counts. In Counts III and IV, Plaintiff asserts claims against all Defendants under the DTSA and the Georgia Trade Secrets Act. Dkt. No. [1] at 20–29. In their Motion to Dismiss, Defendants argue that Plaintiff's trade secrets claims fail as a matter of law and that the Complaint's remaining claims therefore also fail. Dkt. No. [11-1] at 2, 9, 12–13.

"A claim for misappropriation of trade secrets under the Georgia Trade Secrets Act requires a plaintiff to prove that (1) it had a trade secret and (2) the opposing party misappropriated the trade secret." Cap. Asset Rsch. Corp. v. Finnegan, 160 F.3d 683, 685 (11th Cir. 1998) (citation and quotation marks omitted). The same showings are required under the DTSA but with the additional requirement that the trade secret "is related to a product or service

used in, or intended for use in, interstate or foreign commerce." Agilysys, Inc. v. Hall, 258 F. Supp. 3d 1331, 1348 (N.D. Ga. 2017) (quoting 18 U.S.C. § 1836(b)(1)).

Additionally, under both statutes, a plaintiff must take reasonable efforts under the circumstances to maintain the secrecy of its alleged trade secret. See 18 U.S.C. § 1839(3)(A) (defining as an element of a "trade secret" that "the owner thereof has taken reasonable measures to keep such information secret"); O.C.G.A. § 10-1-761 (defining as an element of a "trade secret" that it "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy"). It is this final requirement that is the focus of Defendants' present Motion. Defendants' overarching argument is that Plaintiff has failed to plead sufficient facts demonstrating that it took reasonable steps to protect its alleged trade secrets. Defendants raise three primary arguments in support of their position, which the Court addresses in turn.

First, Defendants note that Plaintiff has alleged that the parties entered into the MLA and NDA in connection with Defendants' use of the CT. Dkt. No. [11-1] at 10. Defendants argue that these agreements are not alone sufficient to show that Plaintiff took reasonable steps to protect its trade secrets. Id. at 10–11.

Defendants' argument on this point is unavailing. Defendants' reliance on Equifax Servs., Inc. v. Examination Mgmt. Servs., Inc., 453 S.E.2d 488 (Ga. Ct. App. 1994), and Georgia district court cases[3] citing that decision is misplaced

---

[3] Defendants also cite decisions from Illinois and Wisconsin district courts, which this Court finds unpersuasive.

because Equifax is distinguishable from the present case and does not support the sweeping proposition that, under Georgia law, there exists a near-categorical rule that nondisclosure agreements are by themselves insufficient to show that a plaintiff took reasonable steps to maintain the secrecy of its alleged trade secrets. In Equifax, the Georgia Court of Appeals held that a boilerplate confidentiality agreement that was overbroad and which every company employee was required to sign was itself insufficient to show that the company had taken reasonable efforts to protect its alleged trade secrets. See Equifax, 453 S.E.2d at 493. However, the court's holding was expressly limited to the facts of that case (which had been decided at summary judgment):

> We *do not hold* that requiring employees to sign confidentiality agreements alone is never sufficient to constitute a reasonable step to maintain the secrecy of information alleged to have been misappropriated. On the contrary, the formality involved in requiring an employee to sign a nondisclosure agreement designed to protect specific information *may well be the only reasonable step that can be taken* to document the employer's position and to serve as a caution against indiscretion. However, a finder of fact could not reasonably conclude that any lingering cautionary effect of the agreement relied upon by Equifax was *alone* sufficient to ensure nondisclosure of the information contained on the customer and correspondents lists. *Under the circumstances presented*, Equifax failed to take reasonable steps to enforce its confidentiality agreement and ensure the continuing secrecy of the information on the lists at issue.

Id. (emphasis added).

The analysis in Equifax demonstrates that whether a plaintiff's reliance on a nondisclosure agreement is sufficient to show reasonable efforts to protect its

6

trade secrets largely depends on the circumstances of the case.[4] At this stage of the present litigation, and based on the current record, the Court cannot conclude as a matter of law that Plaintiff's reliance on the MLA and NDA agreements is plainly insufficient to show that Plaintiff took reasonable steps to protect the secrecy of its alleged trade secrets. For one, and as Plaintiff argues, Plaintiff here relies on two overlapping agreements rather than one broad nondisclosure agreement. Moreover, Plaintiff has alleged that the MLA and NDA agreements applied to Defendants (as licensees) and specific, pre-approved employees and required that Plaintiff's trade secrets be kept confidential:

> Plaintiff's Trade Secrets were imparted to Add Bac and ABI only under the protection of the Agreements, which obligates [sic] each licensee and those employees with pre-approved access by Plaintiff to: maintain absolute confidentiality of the Trade Secrets during and following the terms of the Agreements; not duplicate or make unauthorized alterations of the Trade Secrets; and adopt all reasonable measures to protect the Trade Secrets. . . . Add Bac and ABI were obligated to only use the CT as described in the Agreements[.]"

---

[4] In their Reply, Defendants suggest that Equifax established that there is an "exception" to the "rule" that nondisclosure agreements are generally insufficient to show that a party took reasonable steps to maintain the secrecy of its trade secret. Dkt. No. [18] at 4–5. Defendants maintain that this exception applies when a nondisclosure agreement is the only reasonable step that can be taken to protect a trade secret and that such circumstances are not present in this case. Id. But in making this argument, Defendants misread the court's analysis in Equifax. Rather than establishing any "exception" to a broader rule, the court merely observed that, under some circumstances, a nondisclosure agreement may indeed be the only reasonable step that can be taken to protect certain information. Equifax, 453 S.E.2d at 493. This observation simply illustrates that the determination of whether a party took reasonable steps to maintain the secrecy of its trade secrets depends on the facts and circumstances of the case.

Dkt. No. [1] ¶¶ 88, 103. Indeed, Plaintiff has specifically alleged that, pursuant to the NDA, the CT formula was only made available to authorized officers and employees of Add Bac and ABI on a "need to know basis." Id. ¶ 32. And Plaintiff further alleges that, prior to any individual gaining access to Plaintiff's confidential or proprietary information, Add Bac and ABI were required to disclose the identity of that individual to Plaintiff, and that individual was then required to execute a confidentiality and nondisclosure agreement with Plaintiff. Id. ¶ 33. Accepting these allegations as true, the Court cannot say at this time that these steps were plainly insufficient to show that Plaintiff made a reasonable effort to maintain the secrecy of its trade secrets.[5]

Second, Defendants argue that Plaintiff's trade secrets claims fail because generalized nondisclosure agreements that restrict intangible information with no durational limit are unenforceable. Dkt. No. [11-1] at 11. Defendants contend that Plaintiff's NDA falls into this category of agreements because it attempts to restrict Defendants' use of "information" and "know how" into perpetuity. Id.

Defendants' contentions on this point are unavailing, at least at this time and based on the arguments raised in the parties' briefs. As a starting point, though Defendants are correct that courts applying Georgia law have found broad nondisclosure agreements and clauses unenforceable where they attempt to

---

[5] For the same reason, the Court does not find that Plaintiff has failed to allege sufficient facts to show that it took reasonable efforts to protect its alleged trade secrets.

restrict an individual (typically a former employee) from using the skills, aptitudes, and general knowledge gained through his or her employment,[6] Plaintiff does not seek to restrict the use of Defendants' general knowledge, know-how, or other similar forms of general information or skill. Instead, as emphasized in Plaintiff's Response, Plaintiff seeks to restrict and protect the use of its alleged trade secrets related specifically to the CT and CT formula, as well as the physical records containing or reflecting information about the CT technology and formula.[7] Dkt. No. [16] at 13–15; see also Dkt. No. [1] ¶¶ 12–17, 84–89, 99, 101–104, 115. Thus, in attempting to shift the focus to the unenforceability of agreements that restrict the use of a general information, skill, and know-how

---

[6] See, e.g., Thomas v. Best Mfg. Corp., 218 S.E.2d 68, 70 (Ga. 1975) ("To restrict an employee from utilizing the experience gained and using information not designated as trade secrets and attempting to extend the restriction beyond the employer's business in perpetuity . . . reaches beyond the scope permitted in Georgia . . . . [M]atters other than trade secrets are without protection because a man's aptitude, his skill, his dexterity, his manual and mental ability, and such other subjective knowledge as he obtains while in the course of his employment, are not the property of his employer and the right to use and expand these powers remains his property unless curtailed through some restrictive covenant entered into with the employer." (quotation marks and citations omitted)).

[7] Specifically, Plaintiff states that it is "exclusively concerned with the misappropriation of the CT formula, together with unauthorized formulas derived therefrom, and physical records pertaining thereto." Dkt. No. [15] at 13–14. Plaintiff also states that it "is not alleging the misappropriation of anyone's aptitude, skill, or know-how. Instead, Defendants have stolen the CT formula." Id. at 15. Accordingly, the Court need not reach the issue of whether the NDA's purported restriction on general "information" and "know how" is unenforceable—and the Court takes no position on this issue at this time—because Plaintiff maintains that it "seeks only to enjoin the continued use of the CT formula and its unauthorized applications." Id. at 17.

learned during an individual's employment, Defendants essentially fail to address the substance of Plaintiff's trade secrets claims and the information and materials that Plaintiff actually seeks to protect and restrict.

Moreover, the Court is not persuaded by Defendants' selective (yet generalized) focus on the use of the terms "information" and "know-how" in the NDA to argue that the entire NDA is plainly unenforceable. Stated in full, the portion of the NDA Defendants appear to be citing reads as follows:

> As used in this Agreement, 'Confidential Information' shall mean any facts, opinions, conclusions, projections, data, information, trade secrets or know-how relating to any research project, work in process, future development, engineering, manufacturing, marketing, financial or personnel matter relating to the Company, its present or future products, technology, formulas, recipes, processes, sales, customers, employees, investors, prospects, markets or business whether communicated orally or in writing or obtained by the Receiving Party through observation or examination of the Company's facilities or procedures.

Dkt. No. [1] at 47. As is clear from the language quoted above, this portion of the NDA does refer to "information" and "know how," but it also specifically refers to "trade secrets" as well as "technology, formulas, recipes, [and] processes." Id. In this way, the NDA clause appears to potentially cover specific forms of Plaintiff's alleged property (that is, its trade secrets and the technology, recipes, formulas, and processes related thereto), which is significant because it arguably undermines Defendants' broader, more general point that the NDA is unenforceable because it seeks to restrict general "information" and "know how." See Avnet, Inc. v. Wyle Lab'ys, Inc., 437 S.E.2d 302, 304 (Ga. 1993) ("A person

10

who leaves the employment of another has a right to take with him all the skill he has acquired, all the *knowledge* he has obtained, and all the *information* that he has received, so long as nothing is taken that is *the property of the employer.* Trade secrets are *the property of the employer* and cannot be taken or used by the employee for his own benefit[] . . . ." (quotation marks and citation omitted)); see also Equifax, 453 S.E.2d at 492 (finding that, insofar as a particular confidentiality clause "[did] not in any way prevent [the individual] from using the aptitude, skill, dexterity, mental ability, and such other subjective knowledge as he would have obtained while in the course of the employment," the clause was neither invalid nor unreasonable (alterations adopted) (quotation marks and citation omitted)). Given that Defendants have relied on an overly broad and conclusory argument regarding the unenforceability of the NDA—and given that this argument does not meaningfully address the full substance of the NDA or this particular clause—the Court finds that Defendants have failed to carry their burden on this issue at this time.

Finally, Defendants argue that Plaintiff delayed in bringing this lawsuit and that this delay shows that Plaintiff made no reasonable efforts to protect its alleged trade secrets. Dkt. No. [11-1] at 11–12. Defendants focus on the fact that Plaintiff's President allegedly discovered violations of the MLA and NDA when he visited Defendants' facility and that Plaintiff thereafter sent a cease and desist letter on April 24, 2019. Id. Defendants suggest that because Plaintiff did not ultimately file this lawsuit until July 19, 2021, this shows that Plaintiff has not

only failed to take reasonable steps to protect its alleged trade secrets but also that Plaintiff has in fact "tolerated dissemination" of its alleged trade secrets. Id.

There are multiple problems with Defendants' argument on this point. First, Defendants appear to largely base their argument either on facts not alleged in the Complaint or on negative inferences about the Complaint's allegations. For instance, Defendants suggest that because Plaintiff has not specifically enumerated other remedial measures taken after the April 24, 2019 letter, the Court must draw the conclusion that Plaintiff took no reasonable steps to protect its alleged trade secrets and in fact "tolerated" dissemination of this information. However, the Court has already determined that Plaintiff's allegations are sufficient at this stage to show that it took reasonable steps to protect its trade secrets given the existence of the MLA and NDA agreements and the procedures that allegedly were in place in terms of authorizing and clearing only particular individuals to have access to Plaintiff's trade secrets related to the CT technology and formula. See supra n.5. Moreover, to the extent Defendants suggest that the Court must infer or conclude that Plaintiff thereafter took no steps to protect its alleged trade secrets, the Court may not draw negative inferences about Plaintiff's allegations and claims at this stage given that Plaintiff is the nonmovant. And finally, as argued in Plaintiff's Response, Defendants have not shown (nor even argued) that Plaintiff's trade secrets claims are in fact time-barred, nor have Defendants otherwise demonstrated that Plaintiff's trade secrets claims fail as a matter of law simply because—according to Defendants—Plaintiff did not file its

claims soon enough after discovering alleged violations of the MLA and NDA. At least at this stage and based on Defendants' current arguments, the Court finds no support for Defendants' theory that Plaintiff's choice to file this lawsuit on July 19, 2021, rather than at some earlier point, demonstrates as a matter of law that Plaintiff has failed to take reasonable steps to protect its alleged trade secrets or "tolerated" the dissemination of such trade secrets.

Lastly, Defendants have argued that all of Plaintiff's other claims rise and fall with Plaintiff's trade secrets claims. In this way, Defendants have argued that because Plaintiff's trade secrets claims fail, so too do all of Plaintiff's other claims. Because the Court finds that Plaintiff's trade secrets claims do not fail for the reasons articulated in Defendants' Motion, the Court likewise finds that Plaintiff's other claims do not fail at this time. Defendants' Motion is therefore **DENIED** in its entirety.

## IV. CONCLUSION

In accordance with the foregoing, Defendants' Motion to Dismiss [11] is **DENIED**.

**IT IS SO ORDERED** this 7th day of February, 2022.

**Leigh Martin May**
**United States District Judge**