Date: May 12, 2023

To: Judge Leigh Martin May, US District Judge

Subject: Request for Extension to obtain Counsel

Civil Action #: 4:21-cv-00138-LMM

Plaintiff, Wildwood Consulting is requesting an extension to secure counsel until July 12, 2023. Wildwood consulted with Logan-Thompson PC immediately after FCW Law withdrew from our case. It was our understanding that Logan-Thompson would take our case on a contingency. After Logan-Thompson attorney spoke with FCW Law Firm attorney about our case, Logan-Thompson attorney then requested $100,000 to take our case. It was explained by the attorney representing Logan-Thompson per a phone conversation the reason for the change in payment was due to the following:

- Defendant has pigeonholed his money and FCW Law was concerned about collecting judgement.
- It is too late to file a temporary injunction. Wildwood repeatedly requested a temporary injunction be filed with the court since retaining council in April 2019.
- A court date for this case had never been requested.
- FCW Law closed discovery without Wildwoods consent or knowledge.

It was never the intent of Wildwood Consulting to change council, but after paying over $110,000 in fees, and FCW Law making it clear they will no longer work on our case until paid in full. At this time, we began seeking new council. After FCW Law made it clear they would not work on our case until they were paid in full, we began seeking new council (see attached).

Thank you for the court's consideration.

Sincerely,

Tamera and Tim Croley, Owners - Wildwood Consulting

# Payment Confirmation

 Flint Connolly and ...
FCW Law Firm
LLC

Your $5,000.00 payment has been submitted.

**Memo** Invoice 6110

**Confirmation** TFD6D-GTYW8

CHECK
**Rush Delivery**


Dec 5

**Payment Total** $5,014.95
Includes Fees

# Tim Croley

| | |
|---|---|
| **From:** | David Walker <dwalker@fcwlawfirm.com> |
| **Sent:** | Wednesday, December 7, 2022 2:05 PM |
| **To:** | Tim Croley |
| **Cc:** | Xavier Romero; Anthony Cammarata; Shannon Hackett |
| **Subject:** | Unpaid fees; Status |

EXTERNAL EMAIL: Don't click links or attachments that you aren't expecting. Never give out your user ID or password!

Tim,

I am writing in response to your email to Xavier from yesterday.

Staten has not made any counteroffer to the settlement proposal. Unfortunately, it appears his strategy remains to try and exhaust your resolve and resources to avoid paying you the money that is obviously owed to you. He indicated to you in the beginning that would be his strategy, and despite the substantial evidence against him he appears wedded to that tactic at this time.

Regarding your inquiry about a motion for summary judgment, we do believe such a motion would be appropriate; however, as I emailed to you last week (with no response), "we cannot push your case forward, as you and your wife have requested, if we are not getting paid." In order to have the necessary evidence to prepare a motion for summary judgment we still need to depose at least two witnesses (Donald Robinson and Judy Staten). In turn, opposing counsel is entitled to take your deposition. All of this cost money, and I have been clear from the beginning that I am unwilling to finance this litigation. It is an absolute travesty that Ed breached his contract the way that he did; however, given that we were not involved in preparing that contract, we are left with the task of cleaning up the mess. We have been ultra-diligent in pursuing your case, but I cannot ask my attorneys to work for free. The delays we are now encountering are the byproduct of your nonpayment.

I recognize that you paid $5,000.00 towards your arrearage last week; however, you will need to make arrangements to expeditiously catch up the unpaid balance before we will take on the time and expense of scheduling more depositions.

Thank you,



**David L. Walker, Jr.**
ATTORNEY AT LAW

131 East Main Street
Canton, Georgia 30114

P: 770-720-4411
F: 770-720-3030

**Confidentiality:** This message is being sent on behalf of an attorney. The information contained in this email is intended only for the use of the individual named above and may contain information that is proprietary, privileged, confidential, or otherwise legally exempt from disclosure. Any privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient or the employee or agent responsible to deliver it to the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please delete it immediately and notify the sender by telephone or email.

**From:** Tim Croley <tcroley@live.com>
**Sent:** Tuesday, December 6, 2022 2:21 PM
**To:** Xavier Romero <xromero@fcwlawfirm.com>
**Subject:** Settlement Offer Update

Xavier,

Did you get any response from the defendant on our settlement offer? If not, is it possible to file a motion for judgement with the Judge? Tamera and I are exhausted and need to get this thing settled one way or another. We appreciate all of your help and feel like we have enough evidence to get a judgement or injunction to prevent Ed from continuing his misappropriation. However, you are the experts and need to make that call.

Thank you so much,

Tim

# FLINT, CONNOLLY
# & WALKER, LLP

December 30, 2022

Timothy Croley
Wildwood Consulting
1006 Wildwood Crossing
Williamson, Texas 78633
Via Email and U.S. Mail

   Re: Wildwood Consulting, LLC v. Rogers Finishing, LLC et al
      United States District Court- Northern District of Georgia
      Civil Action File No. 4:21-cv-00138-LMM

Dear Tim:

  As you are aware, you have an outstanding balance that totals Twenty-Seven Thousand Eight Hundred Ninety-Eight and 52/100 ($27,898.52). We have made numerous attempts to collect the outstanding balance without success. As a result, we intend to file a *Motion to Withdraw* from your case if the balance is not paid within ten (10) days.

  Please call to arrange making a payment with our billing department if you wish for us to continue to represent you. If you have not made arrangements for payment within 10 days of the date of this letter, I will presume that you do not wish for us to assist you any further and I will file a Notice of Intent to Withdraw as your attorney with the Court.

            Regards,

            FLINT, CONNOLLY & WALKER, LLP

            David L. Walker, Jr.
            Attorney at Law

131 EAST MAIN STREET P: 770-720-4411
CANTON, GA 30114 F: 770-720-3030  fcwlawfirm.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

WILDWOOD CONSULTING, LLC, :
:
Plaintiff, :
:
:
v. :
:
: CIVIL ACTION NO.
: 4:21-CV-00138-LMM
ROGERS FINISHING, LLC /d/b/a/ :
ADD BAC; ADD BAC, INC.; :
WARREN EDWARD STATEN; and :
JUDY STATEN, :
:
Defendants. :

**ORDER**

This case comes before the Court on Defendants Rogers Finishing, LLC d/b/a Add Bac; Add Bac, Inc. ("ABI"); Warren Edward Staten; and Judy Staten's Motion to Dismiss [11]. After due consideration, the Court enters the following Order.

I. **BACKGROUND**[1]

This case arises from the alleged misuse, disclosure, and misappropriation of Plaintiff's technology and trade secrets. Plaintiff Wildwood Consulting, LLC

---

[1] The relevant facts are taken from Plaintiff's Complaint and assumed to be true. Because Plaintiff is the non-moving party, the alleged facts are construed in the light most favorable to Plaintiff.

("Wildwood") alleges that it developed a unique and proprietary polyurethane coating technology ("the CT") and licensed this technology to Defendants under the parties' Manufacturing License Agreement ("MLA"). The MLA was allegedly entered into on April 25, 2014, and it granted a license to use the CT for a term of five years. In addition, the parties also entered a "Confidentiality/Nondisclosure Agreement" ("the NDA") on March 26, 2014. Plaintiff alleges that its trade secrets and other components of the CT were protected from unauthorized use and disclosure under the terms of both the MLA and NDA.[2]

Prior to the expiration of the MLA, Plaintiff's president, Timothy Croley, visited Defendants Add Bac and ABI's facilities and allegedly observed violations of the MLA and NDA. Specifically, Plaintiff alleges that Mr. Croley (1) noted that certain individuals who were present while the CT was being produced were not the authorized officers or employees of Defendants Add Bac and ABI that had been approved for such access pursuant to the NDA; (2) discovered that Defendants Add Bac and ABI had disclosed confidential information related to the CT to unauthorized individuals; and (3) learned that Defendants had altered the CT's proprietary formula by using a non-approved polyol. Plaintiff additionally alleges that Defendants have continued to use and benefit from the

---

[2] Plaintiff has included copies of the MLA and NDA as exhibits to its Complaint, so the Court may consider these agreements at this stage. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th Cir. 1997) ("[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto." (citation omitted)).

2

CT but have failed to submit certain written reports and pay royalties for such use, all of which is required under the terms of the MLA.

Plaintiff filed this suit on July 19, 2021. Dkt. No. [1]. Plaintiff alleges that Defendants' conduct violated both the MLA and NDA, and Plaintiff brings claims for breach of contract (Counts I and II), violations of the Defend Trade Secrets Act ("DTSA") and Georgia Trade Secrets Act (Counts III and IV), equitable accounting (Count V), piercing the corporate veil (Count VI), punitive damages (Count VII), and attorneys' fees (Count VIII). See id. Defendants have moved to dismiss Plaintiff's Complaint in its entirety, arguing that because Plaintiff's trade secrets claims in Counts III and IV fail as a matter of law, so too do the rest of Plaintiff's claims. See Dkt. No. [11-1].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is

3

plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id. (citing Twombly, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006)). However, this principle does not apply to legal conclusions set forth in the complaint. Iqbal, 556 U.S. at 678.

### III. DISCUSSION

Plaintiff's Complaint contains eight counts. In Counts III and IV, Plaintiff asserts claims against all Defendants under the DTSA and the Georgia Trade Secrets Act. Dkt. No. [1] at 20–29. In their Motion to Dismiss, Defendants argue that Plaintiff's trade secrets claims fail as a matter of law and that the Complaint's remaining claims therefore also fail. Dkt. No. [11-1] at 2, 9, 12–13.

"A claim for misappropriation of trade secrets under the Georgia Trade Secrets Act requires a plaintiff to prove that (1) it had a trade secret and (2) the opposing party misappropriated the trade secret." Cap. Asset Rsch. Corp. v. Finnegan, 160 F.3d 683, 685 (11th Cir. 1998) (citation and quotation marks omitted). The same showings are required under the DTSA but with the additional requirement that the trade secret "is related to a product or service

used in, or intended for use in, interstate or foreign commerce." Agilysys, Inc. v. Hall, 258 F. Supp. 3d 1331, 1348 (N.D. Ga. 2017) (quoting 18 U.S.C. § 1836(b)(1)).

Additionally, under both statutes, a plaintiff must take reasonable efforts under the circumstances to maintain the secrecy of its alleged trade secret. See 18 U.S.C. § 1839(3)(A) (defining as an element of a "trade secret" that "the owner thereof has taken reasonable measures to keep such information secret"); O.C.G.A. § 10-1-761 (defining as an element of a "trade secret" that it "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy"). It is this final requirement that is the focus of Defendants' present Motion. Defendants' overarching argument is that Plaintiff has failed to plead sufficient facts demonstrating that it took reasonable steps to protect its alleged trade secrets. Defendants raise three primary arguments in support of their position, which the Court addresses in turn.

First, Defendants note that Plaintiff has alleged that the parties entered into the MLA and NDA in connection with Defendants' use of the CT. Dkt. No. [11-1] at 10. Defendants argue that these agreements are not alone sufficient to show that Plaintiff took reasonable steps to protect its trade secrets. Id. at 10–11.

Defendants' argument on this point is unavailing. Defendants' reliance on Equifax Servs., Inc. v. Examination Mgmt. Servs., Inc., 453 S.E.2d 488 (Ga. Ct. App. 1994), and Georgia district court cases[3] citing that decision is misplaced

---

[3] Defendants also cite decisions from Illinois and Wisconsin district courts, which this Court finds unpersuasive.

because Equifax is distinguishable from the present case and does not support the sweeping proposition that, under Georgia law, there exists a near-categorical rule that nondisclosure agreements are by themselves insufficient to show that a plaintiff took reasonable steps to maintain the secrecy of its alleged trade secrets. In Equifax, the Georgia Court of Appeals held that a boilerplate confidentiality agreement that was overbroad and which every company employee was required to sign was itself insufficient to show that the company had taken reasonable efforts to protect its alleged trade secrets. See Equifax, 453 S.E.2d at 493. However, the court's holding was expressly limited to the facts of that case (which had been decided at summary judgment):

> We *do not hold* that requiring employees to sign confidentiality agreements alone is never sufficient to constitute a reasonable step to maintain the secrecy of information alleged to have been misappropriated. On the contrary, the formality involved in requiring an employee to sign a nondisclosure agreement designed to protect specific information *may well be the only reasonable step that can be taken* to document the employer's position and to serve as a caution against indiscretion. However, a finder of fact could not reasonably conclude that any lingering cautionary effect of the agreement relied upon by Equifax was *alone* sufficient to ensure nondisclosure of the information contained on the customer and correspondents lists. *Under the circumstances presented*, Equifax failed to take reasonable steps to enforce its confidentiality agreement and ensure the continuing secrecy of the information on the lists at issue.

Id. (emphasis added).

The analysis in Equifax demonstrates that whether a plaintiff's reliance on a nondisclosure agreement is sufficient to show reasonable efforts to protect its

trade secrets largely depends on the circumstances of the case.[4] At this stage of the present litigation, and based on the current record, the Court cannot conclude as a matter of law that Plaintiff's reliance on the MLA and NDA agreements is plainly insufficient to show that Plaintiff took reasonable steps to protect the secrecy of its alleged trade secrets. For one, and as Plaintiff argues, Plaintiff here relies on two overlapping agreements rather than one broad nondisclosure agreement. Moreover, Plaintiff has alleged that the MLA and NDA agreements applied to Defendants (as licensees) and specific, pre-approved employees and required that Plaintiff's trade secrets be kept confidential:

> Plaintiff's Trade Secrets were imparted to Add Bac and ABI only under the protection of the Agreements, which obligates [sic] each licensee and those employees with pre-approved access by Plaintiff to: maintain absolute confidentiality of the Trade Secrets during and following the terms of the Agreements; not duplicate or make unauthorized alterations of the Trade Secrets; and adopt all reasonable measures to protect the Trade Secrets. . . . Add Bac and ABI were obligated to only use the CT as described in the Agreements[.]"

---

[4] In their Reply, Defendants suggest that Equifax established that there is an "exception" to the "rule" that nondisclosure agreements are generally insufficient to show that a party took reasonable steps to maintain the secrecy of its trade secret. Dkt. No. [18] at 4–5. Defendants maintain that this exception applies when a nondisclosure agreement is the only reasonable step that can be taken to protect a trade secret and that such circumstances are not present in this case. Id. But in making this argument, Defendants misread the court's analysis in Equifax. Rather than establishing any "exception" to a broader rule, the court merely observed that, under some circumstances, a nondisclosure agreement may indeed be the only reasonable step that can be taken to protect certain information. Equifax, 453 S.E.2d at 493. This observation simply illustrates that the determination of whether a party took reasonable steps to maintain the secrecy of its trade secrets depends on the facts and circumstances of the case.

learned during an individual's employment, Defendants essentially fail to address the substance of Plaintiff's trade secrets claims and the information and materials that Plaintiff actually seeks to protect and restrict.

Moreover, the Court is not persuaded by Defendants' selective (yet generalized) focus on the use of the terms "information" and "know-how" in the NDA to argue that the entire NDA is plainly unenforceable. Stated in full, the portion of the NDA Defendants appear to be citing reads as follows:

> As used in this Agreement, 'Confidential Information' shall mean any facts, opinions, conclusions, projections, data, information, trade secrets or know-how relating to any research project, work in process, future development, engineering, manufacturing, marketing, financial or personnel matter relating to the Company, its present or future products, technology, formulas, recipes, processes, sales, customers, employees, investors, prospects, markets or business whether communicated orally or in writing or obtained by the Receiving Party through observation or examination of the Company's facilities or procedures.

Dkt. No. [1] at 47. As is clear from the language quoted above, this portion of the NDA does refer to "information" and "know how," but it also specifically refers to "trade secrets" as well as "technology, formulas, recipes, [and] processes." Id. In this way, the NDA clause appears to potentially cover specific forms of Plaintiff's alleged property (that is, its trade secrets and the technology, recipes, formulas, and processes related thereto), which is significant because it arguably undermines Defendants' broader, more general point that the NDA is unenforceable because it seeks to restrict general "information" and "know how." See Avnet, Inc. v. Wyle Lab'ys, Inc., 437 S.E.2d 302, 304 (Ga. 1993) ("A person

who leaves the employment of another has a right to take with him all the skill he has acquired, all the *knowledge* he has obtained, and all the *information* that he has received, so long as nothing is taken that is *the property of the employer*. Trade secrets are *the property of the employer* and cannot be taken or used by the employee for his own benefit[] . . . ." (quotation marks and citation omitted)); see also Equifax, 453 S.E.2d at 492 (finding that, insofar as a particular confidentiality clause "[did] not in any way prevent [the individual] from using the aptitude, skill, dexterity, mental ability, and such other subjective knowledge as he would have obtained while in the course of the employment," the clause was neither invalid nor unreasonable (alterations adopted) (quotation marks and citation omitted)). Given that Defendants have relied on an overly broad and conclusory argument regarding the unenforceability of the NDA—and given that this argument does not meaningfully address the full substance of the NDA or this particular clause—the Court finds that Defendants have failed to carry their burden on this issue at this time.

Finally, Defendants argue that Plaintiff delayed in bringing this lawsuit and that this delay shows that Plaintiff made no reasonable efforts to protect its alleged trade secrets. Dkt. No. [11-1] at 11–12. Defendants focus on the fact that Plaintiff's President allegedly discovered violations of the MLA and NDA when he visited Defendants' facility and that Plaintiff thereafter sent a cease and desist letter on April 24, 2019. Id. Defendants suggest that because Plaintiff did not ultimately file this lawsuit until July 19, 2021, this shows that Plaintiff has not

only failed to take reasonable steps to protect its alleged trade secrets but also that Plaintiff has in fact "tolerated dissemination" of its alleged trade secrets. Id.

There are multiple problems with Defendants' argument on this point. First, Defendants appear to largely base their argument either on facts not alleged in the Complaint or on negative inferences about the Complaint's allegations. For instance, Defendants suggest that because Plaintiff has not specifically enumerated other remedial measures taken after the April 24, 2019 letter, the Court must draw the conclusion that Plaintiff took no reasonable steps to protect its alleged trade secrets and in fact "tolerated" dissemination of this information. However, the Court has already determined that Plaintiff's allegations are sufficient at this stage to show that it took reasonable steps to protect its trade secrets given the existence of the MLA and NDA agreements and the procedures that allegedly were in place in terms of authorizing and clearing only particular individuals to have access to Plaintiff's trade secrets related to the CT technology and formula. See supra n.5. Moreover, to the extent Defendants suggest that the Court must infer or conclude that Plaintiff thereafter took no steps to protect its alleged trade secrets, the Court may not draw negative inferences about Plaintiff's allegations and claims at this stage given that Plaintiff is the nonmovant. And finally, as argued in Plaintiff's Response, Defendants have not shown (nor even argued) that Plaintiff's trade secrets claims are in fact time-barred, nor have Defendants otherwise demonstrated that Plaintiff's trade secrets claims fail as a matter of law simply because—according to Defendants—Plaintiff did not file its

claims soon enough after discovering alleged violations of the MLA and NDA. At least at this stage and based on Defendants' current arguments, the Court finds no support for Defendants' theory that Plaintiff's choice to file this lawsuit on July 19, 2021, rather than at some earlier point, demonstrates as a matter of law that Plaintiff has failed to take reasonable steps to protect its alleged trade secrets or "tolerated" the dissemination of such trade secrets.

Lastly, Defendants have argued that all of Plaintiff's other claims rise and fall with Plaintiff's trade secrets claims. In this way, Defendants have argued that because Plaintiff's trade secrets claims fail, so too do all of Plaintiff's other claims. Because the Court finds that Plaintiff's trade secrets claims do not fail for the reasons articulated in Defendants' Motion, the Court likewise finds that Plaintiff's other claims do not fail at this time. Defendants' Motion is therefore **DENIED** in its entirety.

## IV. CONCLUSION

In accordance with the foregoing, Defendants' Motion to Dismiss [11] is **DENIED**.

**IT IS SO ORDERED** this 7th day of February, 2022.

_____
**Leigh Martin May**
**United States District Judge**

Dear David,

Wildwood Consulting is writing in response to the letter that you emailed on December 30th, 2022. At first, we thought you mixed us up with a client who has never paid or only made partial attempts to pay. When we paid our bill in early October 2022, we thought that we were paid in full and would have some time to replenish our finances to move forward with our case. We were told that after the August 2022 depositions that our billing would be minimal, if any, until the defendants deposed me. The bill of over $32,000 that we first discovered in early November 2022 (the original invoice went to junk email for some reason) was completely unexpected. We made a payment of $5,000 within 30 days of receiving this bill. The letter dating December 30th asking us to pay the entire balance within 10 days shocked us as well. This letter reads as if we have owed this money for months even years with NO attempt to pay. We have always been diligent at making payments for your services. We never dreamed that our case would span past three and a half years, cost over $100K, only to be potentially dropped by the firm representing us.

In the beginning you were aware of our situation, that Ed had taken our livelihood from us and that we had to start over. I was unemployed for a year and most of our resources had been depleted. Our agreed upon strategy was to file for an emergency injunction until we came to a settlement. This has not happened, and we now feel as if you are allowing the defendant's attorney to continue kicking the can down the road.

Therefore, your statement of not getting paid is inaccurate. We have paid in full over $105K dollars to date. Not to mention payments made to our expert witness including lab fees of over $12k. We have always diligently made payments. Your letter reads as if we do not try.

Again, upon agreeing to take our case in April of 2019, we were under the impression that your firm was going to file an emergency injunction to get us paid for breach of contract which was approximately $400,000. Although we have always felt that the emergency injunction was the way to go, we have relied on your advice and expertise as a firm. We felt this would have motivated the defendant to settle which could have provided us with plenty of funds to pursue the additional claims.

It seems like we should be late in the 4th quarter of this lawsuit. Why wouldn't you want to help us get to the finish line? Not only will winning this lawsuit provide income we deserve but will prove the coating technology belongs to Wildwood Consulting solely. The defendant is claiming the technology belongs to AddBac which is false and is making it impossible for Wildwood to pursue other clients which could easily finance our case.

This all leads me to beg the question: Do we not have a strong enough case to win?
Now that we are so close to a positive outcome (according to your staff) you are threatening to fire us as your clients if we do not pay in full by Monday January 9th.

If you decide to withdraw, please forward to us all the files and information regarding our case. Currently, we do not have the funds available to pay in full but will continue making payments, regardless of your decision.

Sincerely,

Tim Croley

600 E 1ST ST
ROME GA 30161-31ND

P: IN        S: IN        I: IN
NICK — 1087
1ZR038R4016761        8188
GPH2KGL    SPA LEFT    MAY 15 07:24:14 2023
US  3010   HIP 23.3.0  ZT411R              1030

near you.

may only contain ...ic media, and must ...ng items other than ...led by weight.

- The UPS Expre... ocuments of no commercial value. Certain countries consider ... a as documents. Visit ups.com/importexport to verify if your shipment is classified as a document.

- To qualify for the Letter rate, the UPS Express Envelope must weigh 8 oz. or less. UPS Express Envelopes weighing more than 8 oz. will be billed by weight.

Note: Express Envelopes are not recommended for shipments of electronic media containing sensitive personal information or breakable items. Do not send cash or cash equivalent.



CLEARED DATE
MAY 15 2023
U.S. Marshals Service
Atlanta, GA

BILLING: P/P
TRACKING #: 1Z R03 8R4 01 6751 8188
UPS NEXT DAY AIR
ROME GA 30161
GA 301 0-01

SHIP
TO: STE 304
    600 E 1ST ST

TIM CROLEY
(512) 713-9503
1006 WILDWOOD CROSSING
GEORGETOWN TX 78633

US DISTRICT COURT NORTH DISTRICT

0.2 LBS LTR 1 OF 1
SHP WT: LTR
DATE: 12 MAY 2023

100% Recycled fiber
80% Post-Consumer

ISH 19.00F ZZP 450 15.5U 04/2023

International Shipping Notice — Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or the Convention on the Contract for the International Carriage of Goods by Road (the "CMR Convention"). The commodities, technology or software were exported

Apply shipping documents on this side.

Do not use this envelope for:

UPS® Ground
UPS® Standard
UPS 3 Day Select®
UPS Worldwide Expedited®

Visit **theupsstore.com** to learn more about our Print & Business Services.

Serving you for more than 110 years
United Parcel Service.®



For information about UPS's privacy practices or to opt out from the sale of personal information, please see the UPS Privacy Notice at www.ups.com

01880250707  9/22  CCC  United Parcel Service